UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TERRENCE LLOYD HADDIX, JR.,

        Plaintiff,

   v.

C/O SEAN BURRIS, *et al.*,

        Defendants.
        _____/

No. C-12-1674 EMC (pr)

**ORDER OF SERVICE**

## I.   **INTRODUCTION**

Terrence Lloyd Haddix, Jr., an inmate at Pelican Bay State Prison, filed a *pro se* civil rights action under 42 U.S.C. § 1983. His complaint is now before the Court for review under 28 U.S.C. § 1915A.

## II.   **BACKGROUND**

According to an exhibit attached to the complaint, assistant institutional gang investigator Sean Burris interviewed Haddix in connection with a gang inactivity review on May 10, 2011.[1] Burris wrote a memorandum – called a chrono or a CDC-128 in prison parlance – that memorialized the interview and recorded Haddix's comments about several items that had been used to validate him as an associate of the Aryan Brotherhood prison gang. Haddix contends in this action that Burris effectively labeled him an informant in that report by attributing a statement to Haddix that Haddix had not made. Haddix further contends that, when he protested, he was subjected to retaliation by prison officials.

---

[1] An inmate who has been validated as a gang associate or member might be released from the security housing unit after six years of inactivity. *See* 15 Cal. Code Regs. § 3341.5(c)(5).

Haddix alleges the following in his complaint about events that occurred in 2011 at Pelican Bay State Prison:

On May 6, a few weeks after Haddix had been placed on the list for gang inactivity review, his cell was searched by three institutional gang investigations ("I.G.I.") officers, who found no gang related items or material. Later that day, Defendant Burris gave to Haddix three confidential disclosure forms (*i.e.*, CDC-1030 forms), and told Haddix he would return on May 10 to pick up Haddix's written response to the CDC-1030 forms.

On May 10, Burris came to Haddix's cell front to retrieve Haddix's written response and asked if Haddix had anything to add. Haddix asked Burris why he (Haddix) was being held accountable for someone else's actions; Burris didn't give a satisfactory answer to Haddix. Haddix denied being a gang member or associate. Docket # 1, p. 7; *see also* Docket # 1-1, p. 18 (Haddix's written response to CDC-1030 forms adamantly denying that they showed any gang activity).

On May 16, Haddix was issued a two-page memorandum in which there appeared the "constructive lie authored by defendant Sean Burris labeling plaintiff a 'snitch.' This conversation never took place." Docket # 1, p. 7. The memorandum, referring to Haddix as "SUBJECT," had the following statement – the italicized portion being the part that gives rise to many of the allegations of the complaint in this action:

> SUBJECT then spontaneously stated, *"You know I am no good with the fellas, what am I trying to do, make my bones*." The term "making ones bones," stems from one inmate conducting an act, typically gang-related in nature, to justify and prove his worth to the gang leadership. Based on the spontaneously stated (sic) by SUBJECT, it is apparent that he knew the outgoing piece of correspondence (source item #3) was coded and referred to his questionable status within the gang and knowing that he maybe (sic) able to "Make his bones," with the Aryan Brotherhood leadership if approved.

Docket # 1-1, p. 17. The memorandum further stated that the institutional gang investigator "has concluded that there is sufficient evidence" to identify Haddix as an associate of the Aryan Brotherhood prison gang. *Id.*

Haddix started the grievance process to challenge the statement by Burris that allegedly labeled him an informant. Burris' response to Haddix's grievance was unsatisfactory. Haddix re-submitted the grievance to Burris's supervisor, who also provided an unsatisfactory response. On

May 23, Haddix asked a counselor to make a copy of the chrono and give it to inmate Acosta to explain to Acosta that Haddix "needs a declaration as to the statement of prisoner Acosta." *Id.* at 7. Prison staff declined, and told Haddix to file an inmate appeal. On May 26, Haddix filed an inmate appeal against Burris for labeling him an informant. Haddix also sent a letter to warden Lewis "asking that he address the issue of his officer labeling [Haddix] a prison 'snitch.'" *Id.* On June 1, Haddix wrote a letter to the head of Office of Correctional Safety, addressing his concerns that Burris had placed Haddix and Haddix's family in danger. On June 12, Haddix submitted the appeal with supporting documentation on Burris to the Pelican Bay prison appeals coordinator.

On June 13, correctional officer ("C/O") Chavez searched Haddix's cell for an hour. Chavez said that he (Chavez) had been ordered by the I.G.I. to "strip and search plaintiff's cell 'real good,'" and that it was "a scare tactic 'for a problem inmate.'" *Id.* at 8. Haddix later learned from the correctional staff that sergeant J. Frisk had ordered the cell search but did not explain his reason for the order. C/O Chavez later told Haddix that the "I.G.I. used me to scare you into droping (sic) your complaint." *Id.*

On June 13, Haddix submitted a grievance to sergeant Frisk about the search.

On June 17, Haddix received an envelope containing the May 26 letter he had sent to warden Lewis, plus a typed note from sergeant Frisk informing him to submit a grievance if he had a staff complaint against the I.G.I. Warden Lewis had forwarded the letter to the I.G.I., "causing them to retaliate against" Haddix. *Id.* at 9.

On June 28, Haddix sent a letter to the public information officer at Pelican Bay about his concerns about being labeled an informant by Burris. He received an unsatisfactory response.

On July 6, Haddix was removed from his cell and moved to a restrictive cell covered with Lexan (i.e., a piece of plexiglass-type material put on the cell front). The correctional officer who moved him said that sergeant Frisk ordered the move. Docket # 1, p. 10.

On August 1, Haddix wrote to warden Lewis stating that he feared the I.G.I. because of their retaliation tactics and asked for a transfer to the Corcoran S.H.U. Warden Lewis did not respond to his request.

3

## III. DISCUSSION

A. Review Of Complaint

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* at § 1915A(b). *Pro se* pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

Haddix alleges in his complaint that Defendant Burris violated his Eighth Amendment rights by labeling him an informant; that Defendant Frisk retaliated against him in violation of his First Amendment rights; and that Defendant Lewis violated his Eighth Amendment rights and his right not to be retaliated against for engaging in activities protected by the First Amendment.

1. Eighth Amendment Claim

The Eighth Amendment requires that prison officials take reasonable measures to guarantee the safety of prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In particular, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Id.* at 833. A § 1983 claim may be stated under the Eighth Amendment against prison officials where the officials acted with "deliberate indifference" to the threat of serious harm or injury to an inmate by another prisoner that may result from spreading certain rumors about the prisoner. *See Valandingham v. Bojorquez*, 866 F.2d 1135, 1138 (9th Cir. 1989) (deliberately spreading rumor that prisoner is an informant may state claim for violation of right to be protected from violence while in state custody).

Although the meaning of the statement is far from clear to a lay person, the Court will assume for present purposes that attributing the statement, "You know I am no good with the fellas,"

4

to an inmate being interviewed to determine whether he was inactive in a prison gang effectively labels him a prison informant.

The complaint fails to state a claim for an Eighth Amendment violation. There is no allegation that Burris told any other inmate that Haddix was an informant or had made the statement. Nor is there any allegation that Burris shared the written report with any other inmate. The risk associated with being identified as an informant is because the prison population consist of "'persons [with] demonstrated proclivit[ies] for antisocial criminal, and often violent, conduct,'" *see Farmer*, 511 U.S. at 833 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526 (1984)). Having not disclosed to other inmates that a particular inmate is an informant, the prison official has not acted with deliberate indifference and has not exposed the prisoner "to a sufficiently substantial 'risk of serious damage to his future health.'" *Farmer*, 511 U.S. at 843.

At most, the allegedly false statement was made by Burris in a document that could be read by other correctional officers. Neither *Farmer* nor *Valandingham* (nor any other case located by the Court) prohibits correctional officers from passing on to other correctional officers information that, if disclosed to other inmates, arguably could put the prisoner in danger. Indeed, the duty to protect often requires that prison officials alert other prison officials to a prisoner's circumstances (*e.g.*, an inmate's known enemies or an inmate's status as an informant or child molester) that may put him at risk from other inmates. In the absence of any allegation that Burris disseminated the allegedly endangering information to other inmates thereby putting Haddix in danger from those inmates, no Eighth Amendment claim is stated against Burris as there is nothing suggestive of him acting with deliberate indifference to the inmate's safety.

Not only is there no allegation that Burris disseminated the information to other inmates, attachments to the complaint make it quite clear that it was Haddix himself who alerted other inmates to the existence of the statement. Haddix obtained declarations from several inmates that they did not hear him make any statement to the effect that he was "no good with the fellas." *See* Docket # 1-1, pp. 65, 69, 72, 74, 77, and 80. And Haddix circulated the report containing the statement that allegedly endangered him, *see* Docket # 1-1, p. 69, 72, and 80. Haddix's dissemination of the information to other inmates also strongly undermines his ability to show the

existence of an objectively serious risk of harm to his safety, as a reasonable person wouldn't provide to other inmates the very information that allegedly would put him in danger from the other inmates.

For similar reasons, no Eighth Amendment claim is stated against warden Lewis. That is, warden Lewis' alleged failure to adequately respond to the letter complaining that a correctional officer had falsely identified Haddix as an informant in a memorandum would not have been deliberately indifferent to any risk to his safety because there was no indication that the information was disseminated to any other inmate so as to endanger the inmate. The facts alleged do not show or suggest that the warden acted with deliberate indifference to a known risk to Haddix's safety, as required to state a claim for an Eighth Amendment violation.

2. Retaliation Claim

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

Giving the *pro se* complaint the liberal construction to which it is entitled, a claim is stated against Defendant Frisk, who allegedly ordered a search of Haddix's cell in retaliation for Haddix's complaint against staff. The complaint does not, however, state a claim against either of the other two Defendants for retaliation. Defendant Burris is not alleged to have taken part in any retaliation, *i.e.*, Burris is not alleged to have taken an adverse action against Haddix because of the latter's protected conduct. It may have been Haddix's complaint about Burris that prompted Frisk to order the cell search, but that does not mean that *Burris* retaliated against Haddix. The complaint also does not allege that warden Lewis took any part in any retaliation against Haddix. Defendant Lewis allegedly forwarded Haddix's letter to the I.G.I., but that does not mean or suggest that the warden told the I.G.I. (or sergeant Frisk) to take any adverse action as a result of the letter to chill Haddix's speech.

B. Request For Appointment of Counsel

Haddix attached to his complaint a request for appointment of counsel to represent him in this action. *See* Docket # 1-1, pp. 3-4. A district court has the discretion under 28 U.S.C. §1915(e)(1) to designate counsel to represent an indigent civil litigant in exceptional circumstances. *See Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986). This requires an evaluation of both the likelihood of success on the merits and the ability of the plaintiff to articulate his claims *pro se* in light of the complexity of the legal issues involved. *See id.* Neither of these factors is dispositive and both must be viewed together before deciding on a request for counsel under § 1915(e)(1). Here, exceptional circumstances requiring the appointment of counsel are not evident at this time. The request for appointment of counsel is **DENIED**.

## IV. CONCLUSION

1. The complaint states a cognizable § 1983 claim against Defendant Frisk for retaliation. All other Defendants and claims are dismissed.

2. The Clerk shall issue a summons and the United States Marshal shall serve, without prepayment of fees, the summons, a copy of the complaint and a copy of all the documents in the case file upon sergeant J. Frisk, who apparently is employed at Pelican Bay State Prison.

3. In order to expedite the resolution of this case, the following briefing schedule for dispositive motions is set:

 a. No later than **November 15, 2012**, Defendant must file and serve a motion for summary judgment or other dispositive motion. If Defendant is of the opinion that this case cannot be resolved by summary judgment, Defendant must so inform the Court prior to the date the motion is due. Defendant must provide to Plaintiff a new *Rand* notice regarding summary judgment at the time he files a motion for summary judgment. *See Woods v. Carey*, No. 09-15548, slip op. 7871, 7874 (9th Cir. July 6, 2012).

 b. Plaintiff's opposition to the summary judgment or other dispositive motion must be filed with the Court and served upon Defendant no later than **December 28, 2012**. Plaintiff must bear in mind the following notice and warning regarding summary judgment as he prepares his opposition to any summary judgment motion:

7

> The defendants [may make] a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. . . . Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. (*Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998).)

Plaintiff also should take note that a Defendant may file a motion to dismiss for failure to exhaust administrative remedies instead of, or in addition to, a motion for summary judgment. A motion to dismiss for failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a) will, if granted, result in the termination of the action. The plaintiff must "develop a record" and present it in his opposition to dispute any "factual record" presented by a defendant's motion to dismiss. *Wyatt v. Terhune*, 315 F.3d 1108, 1120 n.14 (9th Cir. 2003).

        c.     If Defendant wishes to file a reply brief, the reply brief must be filed and served no later than **January 15, 2013**.

    4.     All communications by Plaintiff with the Court must be served on a Defendant's counsel by mailing a true copy of the document to Defendant's counsel. The Court may disregard any document which a party files but fails to send a copy of to his opponent. Until a Defendant's counsel has been designated, Plaintiff may mail a true copy of the document directly to Defendant, but once a Defendant is represented by counsel, all documents must be mailed to counsel rather than directly to that Defendant.

    5.     Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is required before the parties may conduct discovery.

6. Plaintiff is responsible for prosecuting this case. Plaintiff must promptly keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b). Plaintiff must file a notice of change of address in every pending case every time he is moved to a new facility.

7. Plaintiff is cautioned that he must include the case name and case number for this case on any document he submits to this Court for consideration in this case.

IT IS SO ORDERED.

Dated: September 4, 2012

_____
EDWARD M. CHEN
United States District Judge