UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRENCE LLOYD HADDIX, JR.,<br><br>    Plaintiff,<br><br>    v.<br><br>C/O SEAN BURRIS; *et al.*,<br><br>    Defendants.<br>_____/ | No. C-12-1674 EMC (pr)<br><br>**ORDER PARTIALLY GRANTING MOTION TO DISMISS** |

## I.   INTRODUCTION

In this *pro se* prisoner's civil rights action under 42 U.S.C. § 1983, Plaintiff Terrence Lloyd Haddix, Jr., alleged two claims against Defendant J. Frisk. First, he contended that Defendant had violated his First Amendment rights by opening and/or confiscating a letter he had mailed to the warden on May 31, 2011. Second, he claimed that Defendant had ordered a search of his cell and ordered him to move to a cell with a Lexan front in retaliation for Plaintiff's complaint against staff. Defendant now moves to dismiss, contending that the First Amendment claim is not exhausted and the retaliation claim is not adequately pled. For the reasons discussed below, Defendant's motion to dismiss will be **GRANTED IN PART**. Plaintiff will be required to choose whether to dismiss his unexhausted First Amendment claim or stay the entire action while he attempts to exhaust administrative remedies for that claim. This order also addresses two miscellaneous motions filed by Plaintiff.

///

///

///

## II. DISCUSSION

A. The First Amendment Claim Is Not Exhausted

### 1. Legal Standards For Non-Exhaustion Motion To Dismiss

A prisoner's failure to exhaust administrative remedies is a matter in abatement. A defendant has the burden of raising and proving the absence of exhaustion, and may do so by way of an unenumerated Rule12(b) motion. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). "In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." *Id.* at 1119-20, citing *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 369 (9th Cir. 1988). A district court can decide factual issues in a jurisdictional or related type of motion because there is no right to a jury trial as to that portion of the case, unlike the merits of the case (where there is a right to a jury trial). *See id. Wyatt* and *Ritza* allow the district court to resolve factual disputes, but only with regard to the exhaustion issue.

### 2. Analysis

"No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The State of California provides its inmates and parolees the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs., tit. 15, § 3084.1(a). In order to exhaust available administrative remedies within this system, a prisoner must proceed through three levels of appeal: (1) all inmate appeals are submitted and screened at the first level unless the appeal is exempted under the regulation; (2) a dissatisfied prisoner must file a second level appeal to the institution head or designee, and (3) a dissatisfied prisoner must file a third level appeal to the Secretary of the California Department of Corrections and Rehabilitation. *See id.* at § 3084.7; *Woodford v. Ngo*, 548 U.S. 81, 85-86 (2006).

Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). All of the available remedies must be exhausted; those remedies "need not meet

2

1  federal standards, nor must they be 'plain, speedy, and effective.'" *Id.* (citation omitted). Even
2  when the prisoner seeks relief not available in grievance proceedings, notably money damages,
3  exhaustion is a prerequisite to suit. *Id.*; *Booth v. Churner*, 532 U.S. 731, 741 (2001). The statute
4  requires "proper exhaustion" of available administrative remedies. *See Woodford v. Ngo*, 548 U.S.
5  at 93.

6  Defendant demonstrates in his motion to dismiss that Plaintiff did not exhaust administrative
7  remedies with regard to the First Amendment claim. Defendant presents evidence that the CDCR
8  keeps records of inmate appeals that made it to the third level review, i.e., the highest level of
9  review; that Plaintiff had filed several inmate appeals that reached the third level; and that none of
10 Plaintiff's inmate appeals that reached the third level concerned Defendant's alleged confiscation
11 and/or opening of his mail to the warden. *See* Townsend Decl., ¶¶ 8-9 and Ex. A; Lozano Decl., ¶¶
12 6-7 and Ex. A.

13 In his opposition to the motion to dismiss, Plaintiff argues that the issue of the mail
14 opening/confiscation was covered in his inmate appeal because, although he did not pursue the claim
15 individually, it was "in direct concordance with and is an extension of Plaintiff's first claim of
16 retaliation which was addressed and exhausted in his appeal/staff complaint against Defendant. (See
17 Ex. D.)" Docket # 30 at 3.[1]  Plaintiff further contends that the requirement of total exhaustion
18 creates an undue burden because "numerous violations can be extensions of the first violation" and
19 this might prevent a litigant from knowing when he has exhausted remedies as to all of a defendant's
20 misdeeds. *See id.* Plaintiff's arguments fail to persuade the Court.

21 Plaintiff's inmate appeal concerning Defendant did not suffice to exhaust the First
22 Amendment claim regarding the alleged opening and/or confiscation of Plaintiff's letter to warden
23 Lewis. The inmate appeal complained of Defendant's "order[ing Plaintiff's] cell striped (sic) and
24 searched by C/O C. Chavez." Docket # 18-1 at 42. The inmate appeal did not urge at any level that

---

[1] After the motion to dismiss was fully briefed, Plaintiff submitted a late declaration stating that he had mentioned the First Amendment mail claim during an interview at the second level review of his inmate appeal. *See* Docket # 33. Even if believed, this evidence does not help him because mentioning a claim at the second level interview does not suffice to exhaust the claim at the third level.

3

Defendant had wrongfully opened and/or confiscated Plaintiff's letter to warden Lewis. Although a letter to the warden *was* mentioned in the inmate appeal, no reasonable person would have understood its mention to assert any claim about the letter. In fact, the inmate appeal contradicts the First Amendment claim alleged in the amended complaint by stating that "[t]he warden forwarded my letter to I.G.I sgt. J. Frisk" rather than that the letter was improperly opened or confiscated by Defendant. Docket # 18-1 at 41. If the warden forwarded the letter to Defendant to handle – rather than (as Plaintiff alleged in his amended complaint) Defendant confiscated or improperly opened the letter – there would be no viable First Amendment claim. *See* Docket # 19 at 4.[2] In short, Plaintiff's statement in his inmate appeal that the warden forwarded a letter to Defendant failed to exhaust his claim that Defendant improperly opened and/or confiscated Plaintiff's letter to the warden.

---

[2] In the Order Permitting Amended Complaint, the Court discussed Plaintiff's First Amendment claim:

> Haddix alleged [in his amended complaint] that, about a month after he sent a letter to the warden, the letter was returned to him with a typed note from correctional sergeant Frisk that stated, "If you have a complaint against IGI staff, you need to submit a staff complaint to the Appeal coordinator and follow the guidelines set forth in the California Code of Regulations, Title 15, section 3084, Inmate Appeals.'" Docket # 18-1, p. 6. Haddix alleged that, because the letter was marked "confidential mail," it should not have been opened by anyone but the addressee. *Id.* at 6-7. Haddix alleged that Frisk's opening and responding to a confidential letter mailed to the warden "constituted a violation of privileged mail under the 1st Amendment to the United States Constitution." Docket # 18-1, p. 10. Giving the *pro se* amended complaint the liberal construction to which it is entitled, a cognizable claim is stated for a First Amendment violation, as the amended complaint could be read to mean that sergeant Frisk improperly confiscated the letter. The Court notes, however, that the substance of sergeant Frisk's message – i.e., that Haddix had to follow the regulations for inmate appeals if he wanted to complain about staff misconduct – does not give rise to any § 1983 liability because prison officials may require inmates to comply with regulations that have established procedures for recurring issues without violating an inmate's constitutional rights. *See Resnick v. Adams*, 348 F.3d 763, 770 (9th Cir. 2003) (prison had a legitimate governmental interest in the orderly administration of a program that allowed prisons to accommodate the needs of thousands of prisoners and that "[a]llowing inmates to make requests outside this system by letters sent to various prison officials would frustrate the orderly administration" of the program).

Docket # 19 at 4.

4

The statute requires "proper exhaustion" of available administrative remedies, *Woodford v. Ngo*, 548 U.S. at 93, and in California that means pursuing an inmate appeal through to receipt of a director's level decision, Cal. Code Regs., tit. 15, § 3084.7.. Plaintiff did not properly exhaust his available administrative remedies as to his First Amendment claim. Defendant has carried his burden on his motion to dismiss and demonstrated that the CDCR has no record that Plaintiff ever filed an inmate appeal that (a) complained of Defendant's opening and/or confiscation of Plaintiff's letter to the warden and (b) received a decision at the director's level before he filed this action. The claim is unexhausted and cannot be litigated in its unexhausted state.

Dismissal of the entire complaint is not necessary when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. *Jones v. Bock*, 549 U.S. 199, 222-24 (2007) (rejecting "total exhaustion-dismissal" rule); *Lira v. Herrera*, 427 F.3d 1164, 1170 (9th Cir. 2005). When faced with a mixed complaint in which the unexhausted and exhausted claims are not intertwined where the plaintiff does not wish to dismiss the entire action, the district court should simply dismiss the unexhausted claim. *See Lira*, 427 F.3d at 1175.

Here, Plaintiff's exhausted and unexhausted claims are not intertwined. The unexhausted claim is alleged in paragraphs 27-29 of the "Facts" section (Docket # 18-1 at 6-7), and paragraph 4 of the "Legal Claims" section (Docket # 18-1 at 10). The unexhausted First Amendment claim is **DISMISSED**. This dismissal is without prejudice to Plaintiff filing a new action asserting the First Amendment claim if he ever satisfies the exhaustion requirement.

B.      The Retaliation Claim Is Adequately Pled By The *Pro Se* Litigant

      1.      Rule 12(b)(6) Standards

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss on the ground that there is a "failure to state a claim upon which relief may be granted." A motion to dismiss should be granted if plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41 (1957)). The court "must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and must construe *pro se* pleadings liberally, *Hebbe v. Pliler*, 627 F.3d 338, 341-42 (9th Cir. 2010). The court need not

5

accept as true allegations that are legal conclusions, unwarranted deductions of fact or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988, *amended*, 275 F.3d 1187 (9th Cir. 2001). In considering a motion to dismiss, the court may take judicial notice of matters of public record outside the pleadings. *See MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).

2. <u>Analysis</u>

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

Defendant urges in his motion to dismiss that Plaintiff's amended complaint fails to allege facts showing any of these elements of a retaliation claim other than the existence of protected conduct by the prisoner. Defendant's argument fails to persuade the Court.[3]

Plaintiff's amended complaint is adequate to plead a retaliation claim. Plaintiff adequately alleges adverse action, i.e., an excessively vigorous and long search of his cell as well as his placement in a cell with a Lexan front. *See* Docket # 18-1 at 5-6 ("excessive cell search" that led him to ask "why his cell was being searched for so long"), and 7-8 (Plaintiff was told he was moved to a restrictive cell upon Defendant's order). The amended complaint also sufficiently alleges that the adverse action was caused by his First Amendment activity. Plaintiff allegedly was told by a correctional officer that "IGI had ordered him to 'strip and search plaintiff's cell real good'" and that

---

[3] This portion of Defendant's motion seeks to have the Court revisit a decision already made, as the Court already had determined that the complaint and amended complaint *did* state a claim upon which relief may be granted with regard to the retaliation claim. *See* Docket # 4 at 6; Docket # 19 at 4. This determination was made during the initial screening of the complaint and amended complaint under 28 U.S.C. § 1915A, which requires the court to dismiss, among other things, any claims that "fail to state a claim upon which relief may be granted." A pleading challenge following a § 1915A screening of a prisoner complaint rarely will be successful, especially in light of the requirement that *pro se* complaints be liberally construed. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (even after Supreme Court cases heightened the standards for pleading, the court's obligation "remains, 'where the petitioner is *pro se*, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt.'")

the officer told him the search was "'conducted as a scare tactic for a problem inmate.'" Docket # 18-1 at 5-6. Later, Plaintiff allegedly learned from another officer that Defendant was the person who ordered the cell search. Additionally, the correctional officer who conducted the extra-vigorous search allegedly told him that the "IGI used" him "'to try and scare you into dropping your complaint' (referring to plaintiff's complaint against officer Burris)." Docket # 18-1 at 6. That suffices to allege a causal connection between the First Amendment activity and the alleged retaliatory action ordered by Defendant. Defendant provides no legal authority for his suggestion that the retaliating actor must have been the same person about whom the prisoner filed an inmate appeal; that argument goes to the credibility of Plaintiff's theory of a causal link rather than the legal adequacy of Plaintiff's claim. One can reasonably infer that the extra-vigorous cell search and move to a cell with a Lexan front that allegedly were ordered to scare Plaintiff to drop his complaint did not reasonably advance a legitimate correctional goal, giving the *pro se* pleading the liberal construction to which it is entitled. Defendant's argument that cell searches serve legitimate correctional purposes is misplaced because the Rule 12(b)(6) motion tests the adequacy of the pleading, not the plaintiff's ability to prove his claim. Defendant is free to present *evidence* at the summary judgment stage and, if a trial is needed, at the trial to demonstrate that the cell search and move were done to further legitimate correctional goals, but merely positing that cell searches can promote legitimate correctional goals does not show the plaintiff's amended complaint to be facially deficient. The vigorous cell search and the later move to a cell with a Lexan front, both allegedly done at the behest of Defendant, provided facts sufficient to allege the required chilling effect. *See Rhodes*, 308 F.3d at 569 (destruction of inmate's property and assaults on the inmate enough to chill inmate's First Amendment rights and state retaliation claim, even if inmate filed grievances and a lawsuit). The fact that the plaintiff continued to engage in First Amendment activity does not negate the chilling effect. *See generally Rhodes*, 408 F.3d at 569 ("Because 'it would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity,' [the prisoner] does not have to demonstrate that his speech was 'actually inhibited or suppressed.'").

Giving the *pro se* amended complaint the liberal construction to which it is entitled, the Court concludes once again that Plaintiff has stated a claim upon which relief may be granted for retaliation. The Rule 12(b)(6) motion to dismiss the retaliation claim must be denied.  An important caveat to the *pro se* plaintiff: The Court has merely determined that the amended complaint is legally sufficient to allege a retaliation claim.  The Court has not made any determination about Plaintiff's ability to *prove* his claim.

Defendant also urges that he is entitled to qualified immunity on the retaliation claim.  To determine whether an official is entitled to qualified immunity, the Court must decide whether the facts alleged show the official's conduct violated a constitutional right; and, if so, whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001); *see also Pearson v. Callahan*, 555 U.S. 223 (2009) (overruling *Saucier*'s requirement that qualified immunity analysis proceed in a particular sequence).  Defendant's argument that he is entitled to qualified immunity is premised on his belief that the amended complaint failed to allege a constitutional violation.  That premise is wrong as explained in the preceding paragraphs.  Also, accepting the allegations as true, no reasonable officer would have thought it lawful to retaliate against an inmate for his First Amendment activity.  Thus, Defendant is not entitled to qualified immunity at the pleading stage.

C.   Miscellaneous Motions

Plaintiff's third motion for appointment of counsel (Docket # 27) is **DENIED** for the same reasons given for the denial of is second motion for appointment of counsel. *See* Docket # 8.

Plaintiff's motion to hold the ruling on the motion to dismiss in abeyance while he gathers evidence to prove the merits of the claims in his amended complaint is **DENIED** as unnecessary. (Docket # 28.)  Defendant's motion to dismiss did not call upon Plaintiff to prove his case.  Plaintiff did not need to conduct discovery about the merits of his claims to oppose the motion to dismiss that challenged the sufficiency of the pleading and the adequacy of his efforts to exhaust administrative remedies.

Plaintiff's "motion to include plaintiff's declaration in support of plaintiff's opposition to defendant's motion to dismiss" is **GRANTED** in that the Court has considered the tardy material.

8

For future purposes, Plaintiff is cautioned that late evidence is generally not accepted, especially when (as here) that evidence was well within the Plaintiff's knowledge and control at the time the opposition was due.

### III. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is **GRANTED** as to the First Amendment claim and **DENIED** as to the retaliation claim. (Docket #22.) The First Amendment claim is dismissed without prejudice to Plaintiff filing a new action asserting that claim if he ever satisfies the exhaustion requirement for it.

Plaintiff's motion to appoint counsel and motion to hold the ruling in abeyance the ruling on the motion to dismiss are **DENIED**. (Docket # 27 and # 28.)

In order to move this action toward resolution, the court now sets the following briefing schedule for any motion for summary judgment or other dispositive motion:

    a. No later than **March 21, 2014**, Defendant must file and serve a motion for summary judgment or other dispositive motion. If Defendant is of the opinion that this case cannot be resolved by summary judgment or other dispositive motion, Defendant must so inform the Court prior to the date the motion is due.

    b. Plaintiff's opposition to the summary judgment or other dispositive motion must be filed and served upon Defendant's counsel no later than **April 18, 2014**.

    c. Defendant's reply brief, if any, must be filed and served no later than **May 2, 2014.**

Plaintiff is reminded to read the *Rand* notice regarding summary judgment motions that was included at page 8 of the order of service. Defendant also must provide a *Rand* notice regarding summary judgment motions at the time he files and serves his motion for summary judgment.

IT IS SO ORDERED.

Dated: January 29, 2014

EDWARD M. CHEN  
United States District Judge