UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRENCE LLOYD HADDIX, JR., | No. C-12-1674 EMC (pr) |
| Plaintiff, | |
| v. | **ORDER DENYING PLAINTIFF'S MOTION TO COMPEL DISCOVERY; AND REQUIRING *IN CAMERA* PRODUCTION** |
| C/O SEAN BURRIS; *et al.*, | |
| Defendants. | |

## I. INTRODUCTION

This is a *pro se* prisoner's civil rights action under 42 U.S.C. § 1983, in which Plaintiff claims that Defendant J. Frisk, a correctional sergeant, ordered a search of his cell and ordered him moved to a cell with a Lexan front in retaliation for Plaintiff's complaint against another member of the prison staff. Plaintiff now moves to compel further responses to 14 of his 16 interrogatories and 13 of his 18 requests for production of documents to Defendant. Defendant opposes the motion. For the reasons discussed below, the motion to compel will be denied and Defendant will be required to produce documents pertaining to two matters for *in camera* review.

## II. BACKGROUND

Plaintiff propounded discovery requests on Defendant. Defendant asserted some objections but provided substantive responses to 15 of Plaintiff's 16 interrogatory requests and provided over a hundred pages of documents in response to the requests for production of documents.

The meet-and-confer efforts were minimal. On July 16 or 17, 2014, Plaintiff mailed a single meet-and-confer letter that complained generally about the responses. Defense counsel responded

with a letter dated August 1, 2014, requesting that Plaintiff identify the particular discovery items at issue, but Plaintiff did not respond.  Plaintiff either ignored defense counsel's letter and filed his motion to compel, or had already filed his motion to compel before the letter arrived.  (The motion to compel has a signature date of July 31, 2014, and a proof of service stating that the document was mailed on August 5, 2014.  The envelope containing the motion to compel was postmarked August 6, 2014.)  Regardless of whether he filed the motion to compel before or after receipt of the meet-and-confer letter from defense counsel, Plaintiff never responded to defense counsel's meet-and-confer letter.

## III.  DISCUSSION

A party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).  "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).  "Relevancy, for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries." *Gonzales v. Google, Inc*., 234 F.R.D. 674, 679–80 (N.D. Cal.2006).

A.   Plaintiff Failed To Make A Good Faith Effort To Meet And Confer

The Court does not have enough time or resources to oversee all discovery, and therefore requires that the parties present to it only their very specific disagreements. And to promote the goal of addressing only very specific disagreements (rather than becoming an overseer of all discovery), the Court requires that the parties meet and confer to try to resolve their disagreements before seeking Court intervention. See Fed. R. Civ. P. 37(a)(1); N. D. Cal. Local Rule 37.

Plaintiff failed to make a good faith effort to meet and confer.  Plaintiff sent one ineffectual meet-and-confer letter that complained generally about the responses, and did not respond to defense counsel's letter asking him to identify the particular discovery items at issue.  Plaintiff now asks the court to excuse further meet-and-confer requirements.  *See* Docket # 56 at 2-3.  He argues that he did not have sufficient time to engage in the meet-and-confer process due to the deadline for him to oppose the pending summary judgment motion.  Any time problems Plaintiff confronted were of his own making, as he had known since 2011 that Defendant claimed to have ordered the cell search as

2

1  a training exercise, *see* Docket # 1 at 42 (inmate appeal), and had known since September 2012 that
2  he could do discovery, *see* Docket # 4 at 8 (order of service).

3       Plaintiff argues in his reply that his meet-and-confer letter was proper because he was
4  dissatisfied with Defendant's *entire* response. That is just the kind of broad-brush approach that is
5  unacceptable. Defendant did provide substantive information in response to many of his requests
6  and Plaintiff could have narrowed down or clarified his requests during the meet-and-confer process.
7  Also, Plaintiff plainly wasn't dissatisfied with the entire response, as Defendant fully answered some
8  discovery requests (e.g., Interrogatory Nos. 4 and 10) and Plaintiff makes no argument that those
9  responses were deficient in his supplemental statement.

10      Had Plaintiff made a good faith effort to be more specific in his complaints about
11 Defendant's responses, he could have resolved any problems with the relevance objections based on
12 his failure to provide a time-frame for most of his discovery requests. Had Plaintiff made a good
13 faith effort to meet and confer, he could have resolved objections based on language problems, such
14 as the objection to his Interrogatory No. 1 and Request For Production of Documents No. 17,[1]
15 inarticulately worded questions that present precisely the kind of discovery problem that the parties
16 should work out during the meet-and-confer process before asking the Court to compel a further
17 response. Had Plaintiff made a good faith effort to meet and confer, the parties might even have
18 come to some agreement about confidential documents as to which Defendant claimed a privilege.
19 The motion to compel will be denied because plaintiff failed to engage in a good faith effort to meet

---

[1] Interrogatory No. 1 asked, without any definition of the terms or limitation as to time: "State in detail the similarities and differences, overlap and separation in the purvue and duties between IGI staff and non-IGI staff in the normal day-to-day operations in the SHU at P.B.S.P. If this purvue and these duties are set forth in any job description or other document, produce the document(s)." Docket # 50 at 3 (errors in source).

Request For Production of Documents No. 17 sought "documents in the defendant's personell (sic) file pertaining to any reprimands or complaints made against him by staff or inmates, or anything that could be deemed relevant to the allegations made by plaintiff in this case." The text following the comma created an ambiguity as to whether "anything that could be deemed relevant to the allegations made by plaintiff in this case" was limited to documents in Defendant's personnel file or documents located anywhere. Defendant apparently thought it meant the latter as he objected that responding would be unduly burdensome, and perhaps involving tens of thousands of documents. Plaintiff may have meant otherwise and, if so, could have explained that during the meet-and-confer process.

and confer to resolve the discovery dispute. There are other reasons to deny the motion to compel, and they are discussed next.

B.      The Official Information Privilege Claimed Against Several Discovery Requests

    1.      Cell Search Information

Interrogatories Nos. 2, 3, 4, 5, 6 and 7, and Requests for Production of Documents Nos. 2, 3, 4, 5, and 6, asked for information and documents pertaining to cell search decisions.

Plaintiff's discovery requests related to the search were as follows:

Interrogatory No. 2: "State the duties of defendant J. Frisk, while acting as IGI sergeant at P.B.S.P. on June 13, 2011, insofar as they pertain to ordering, supervising, and being involved in any way with random cell searches which in no way pertain to IGI activities."

Request For Production Of Documents No. 2: "If those duties are set forth in any job description or other document, produce the document(s)."

Interrogatory No. 3: "State the procedure in effect on June 13, 2011 at P.B.S.P. for ordering, selecting, conducting, and supervising random cell searches. [¶] (A) If the procedure differs for IGI and non-IGI sergeants, state the difference(s)."

Request For Production Of Documents No. 3: "If these procedures are set forth in any policies, directives, or other documents, produce the documents(s)."

Interrogatory No. 4: "State the procedure and method defendant J. Frisk used on June 13, 2011 to randomly select plaintiff's cell to be searched."

Request For Production Of Documents No. 4: "If this procedure and method are set forth in any policy, directive, or other document, produce the document(s).";

Interrogatory No. 5: "State the procedure in effect on June 13, 2011 at P.B.S.P. for the ordering, selecting, conducting, and supervising of random cell searches for training purposes."

Request For Production Of Documents No. 5: "If these procedures are set forth in any policies, directives, or other documents, produce the document(s)."

4

Interrogatory No. 6: "State the procedure and method Defendant J. Frisk used on June 13, 2011 to supervise the training cell search he ordered correctional officer C. Chavez to conduct."

Request For Production Of Documents No. 6: "If this procedure and method are set forth in any policy, directive, or other document, produce the document(s)."

Interrogatory No. 7: "While acting as a correctional sergeant in the IGI unit at P.B.S.P., how many non-IGI correctional officers has defendant J. Frisk ordered to conduct and then supervised the training for random, non-IGI related cell searches?"

Request For Production Of Documents No. 7: "Produce a list of names and contact information."

Docket # 55-1 at 2-3.

Defendant objected to these discovery requests (except Interrogatory No. 4) on several grounds, including that the information is protected from disclosure by the official information privilege.

"Federal common law recognizes a qualified privilege for official information." *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033-34 (9th Cir. 1991). The privilege "'is broad enough to cover all the disparate kinds of data and communications that can be involved in these types of' civil rights cases against governmental actors. *Kelly v. City of San Jose*, 114 F.R.D. 653, 659 (N.D. Cal. 1987). Government personnel files are among the types of official information to which the privilege may be applied. *See Sanchez*, 936 F.2d at 1033. "To determine whether the information sought is privileged, courts must weigh the potential benefits of disclosure against the potential disadvantages. If the latter is greater, the privilege bars discovery." *Id.* at 1033-34. The party opposing disclosure must make a substantial threshold showing by submitting a declaration or affidavit from a responsible person "stat[ing] with specificity the rationale of the claimed privilege." *Kerr v. United States Dist. Ct. for the Northern Dist. of Cal.*, 511 F.2d 192, 198 (9th Cir. 1975). In order for the Court to determine whether the official information privilege applies, a defendant must provide with the objection a declaration or affidavit containing (1) an affirmation that the agency generated or collected the material in issue and has in fact maintained its confidentiality, (2) a

1  statement that the official has personally reviewed the material in question, (3) a specific
2  identification of the governmental or privacy interests that would be threatened by disclosure of the
3  material to the plaintiff, (4) a description of how disclosure subject to a carefully crafted protective
4  order would create a substantial risk of harm to significant governmental or privacy interests, and (5)
5  a projection of how much harm would be done to the threatened interests if the disclosure were
6  made. *Kelly v. City of San Jose*, 114 F.R.D. 653, 670 (N.D. Cal. 1987).

7  Defendant makes a sufficient showing that the confidential documents and confidential
8  information sought regarding cell searches are covered by the official information privilege with the
9  declaration of S. Soderlund, the litigation coordinator at Pelican Bay. *See* Docket # 55-5.[2]

10  The burden thus shifts to Plaintiff to: (1) show how the requested information is relevant to
11  the litigation or is reasonably calculated to lead to the discovery of admissible evidence; (2) identify
12  his interests that would be harmed if the material were not disclosed; and (3) show how that harm
13  would occur and how extensive it would be. *Kelly*, 114 F.R.D. at 671. Plaintiff does not meet his
14  burden. He only generally asserts that the information is relevant, and does not identify his interests
15  that will be harmed if the materials are not disclosed and does not explain how that harm will occur
16  or how extensive it will be.

17  Plaintiff's retaliation claim pertains more to the selection of his particular cell to be searched
18  rather than the conduct of the search itself as he admits that "none of [his] property got disposed of
19  or destroyed or anything of that nature." Docket # 40-1 at 25 (Haddix Deposition Transcript at RT
20  82). In his discovery responses, Defendant did provide substantial non-confidential information
21  about cell searches, so it cannot be said that Plaintiff has been denied all relevant information. In his
22  interrogatory responses, Defendant described the general requirements that correctional staff
23  conduct a minimum number of searches during each shift and that he selected Plaintiff's cell
24  randomly for a search. Defendant also produced non-confidential documents providing relevant

---

[2] The declaration did not have a privilege log. In some instances, a privilege log would be helpful to figure out which particular documents are covered by the privilege. Here, the mere preparation of a privilege log would be an onerous task as many of Plaintiff's discovery requests were overbroad, and he did not narrow them down through the meet-and-confer process. The Soderlund declaration's general discussion of the security concerns was acceptable under these circumstances.

1 information.  He produced a document with a lengthy list of tasks a correctional officer may perform
2 and a lengthy list of tasks a correctional sergeant may perform; searching inmate living quarters is a
3 task a correctional officer may perform, *see* Docket # 55-4 at 52-54, and ensuring that random
4 searches are conducted is a task a correctional sergeant may perform.  *See* Docket # 55-4 at 43, 42-
5 54.  He also provided a copy of a regulation that allowed for unscheduled searches, *see id.* at 70, and
6 sections of the CDCR Operations Manual pertaining to searches and pertaining to employee
7 training, *see id.* at 76-96.  Although Defendant provided this non-confidential information, he
8 objected to providing information that is normally kept confidential from inmates.

9 Evaluation of the official information privilege is necessarily affected by the fact that
10 materials pertain to decision-making in a prison in which the Plaintiff remains incarcerated.  Plaintiff
11 is in the highest security facility in the California Department of Corrections and many of his fellow
12 prisoners are affiliated with prison gangs.   "When discoverable information may give rise to
13 institutional safety and security concerns, courts balance the need for the information and the extent
14 the information compromises security to determine whether disclosure is warranted."  *Rogers v*
15 *Giurbino*, 288 F.R.D. 469, 480 (S. D. Cal. 2012); *see, e.g, United States v. Wilson*, 791 F.2d 1383
16 (9th Cir. 1986) (in criminal prosecution for escape, district court properly denied discovery requests
17 for records concerning prison security measures and informant information after reviewing the
18 evidence *in camera* and "conclud[ing] that the information sought to be discovered was not
19 sufficiently material to overcome the government's compelling interests in inmate safety and prison
20 security"); *Candler v. Santa Rita County Jail Watch Commander*, 2014 WL 2120310, *3-4 (N.D.
21 Cal. May 21, 2014) (relying on official information privilege to deny motion to compel further
22 production of jail's policies and procedures regarding classification of inmates that "implicat[ed]
23 some specifics on how inmates are classified"; also, defendant had already provided plaintiff with
24 publicly available policies and procedures regarding the housing of inmates); *id.* at *4 (relying on
25 official information privilege to deny motion to compel further responses to interrogatories about
26 classification of gang members and housing of gang members); *Walker v. Ryan*, 2012 WL 1599984,
27 *3-4 (D. Ariz. 2012) (prison officials adequately identified legitimate security concerns that required
28 denial of motion to compel further responses to discovery requests seeking information about

methods for identifying prison gang members, collecting and analyzing gang intelligence); *Ibanez v. Miller*, 2009 WL 3481679, *2-3 (E.D. Cal. 2009) (denying discovery request because disclosing details about how prison officials respond to prison alarms would compromise prison safety; even if the document was relevant, its relevance it attenuated and plaintiff could present his claim without the document).

The official information privilege protects from disclosure in this case confidential information about cell searches, including the selection of cells to be searched, the methods for searching cells, and the training of persons regarding cell searches.  Disclosing this information about cell searches would greatly undermine the usefulness of cell searches because it would educate the inmates regarding prison investigations and intelligence gathering, and "could provide inmates with information necessary to avoid or thwart staff members' attempts to secure the prison and maintain security." Docket # 55-5 at 3-4.  Prisoners who know how and when and why cells will be searched will be better able to avoid detection of weapons and other contraband, thereby jeopardizing the safety of staff and inmates.  Those safety concerns regarding contraband are not illusory, as Plaintiff's own history shows: he is in prison on a 32-year sentence upon his conviction of attempted murder for stabbing another inmate with a knife he had obtained from another inmate in a gang-related incident at Pelican Bay. *See People v. Haddix*, 2006 WL 802676 (Cal. Ct. App., March 30, 2006).

A protective order is an unworkable option for the confidential documents here because there is no realistic enforcement mechanism to deter Plaintiff from violating a protective order.  Plaintiff already is in custody for a very lengthy amount of time, so the threat of a contempt citation would have little deterrent effect on him.  He also is a pauper, so the threat of a monetary sanction would have little deterrent effect.  The danger that would flow from any misuse of the confidential information and documents is grave and the Court is unwilling to say that misuse is not a possibility.  Because of the possibility of misuse of the information and the danger that would follow, the evidence cannot be disclosed to Plaintiff subject to a protective order.

2. <u>Personnel Files and Confidential Investigation Information</u>

Interrogatories Nos. 14, 15 and 16, and Requests for Production of Documents Nos. 17 and 18, asked for information about confidential investigations and Defendant's personnel files. Defendant objected to these discovery requests on several grounds, including that the information was protected from disclosure by the official information privilege.

These discovery requests sought the following:

Interrogatory No. 14: "Has the Defendant ever retaliated or been accused of any retaliation of any kind by inmates or staff while working as a Correctional Officer?"

Interrogatory No. 15: "Identify each person known to you and not otherwise identified in your answers to these interrogatories who has provided any information or assistance of whatever nature or description, relating to any of your answers to these interrogatories."

Interrogatory No. 16: "Identify each person who has made to you sworn or unsworn statements or provided information for affidavits or statements that relate to the allegations made in plaintiff's complaint and state the information provided."[3]

---

[3] Defendant responded to Interrogatory No. 16 as follows:

> Objection. Defendant Frisk objects on the basis that this interrogatory seeks information protected from disclosure under the Official-Information Privilege. (See Soderlund Decl. 2-11.) Defendant further objects on the basis that the request is overly broad and seeks information protected from disclosure under the attorney-client privilege. Subject to and without waiving these objections, Defendant Frisk responds as follows:
>
> 1. S. Soderlund, Correctional Counselor II Specialist
>    California Department of Corrections and Rehabilitation
>    Pelican Bay State Prison
>
> 2. M. Statham, Correctional Officer
>    California Department of Corrections and Rehabilitation
>    Pelican Bay State Prison
>
> 3. C. Chavez, Correctional Officer
>    California Department of Corrections and Rehabilitation
>    Pelican Bay State Prison
>
> 4. Sahar Nayeri, former Deputy Attorney General
>    California Department of Justice

Request For Production Of Documents No. 17:  "Produce any and all documents in the defendant's personell [sic] file pertaining to any reprimands or complaints made against him by staff or inmates, or anything that could be deemed relevant to the allegations made by plaintiff in this case."

Request For Production Of Documents No. 18:  "Produce all other documents, items of evidence, or sworn or unsworn statements or affadavits [sic] that relate to the allegations made in plaintiff's complaint."

Docket # 55-1 at 2-3.

Defendant makes a sufficient showing that the confidential documents and confidential information sought regarding personnel files and confidential investigations are covered by the official information privilege with the Soderlund declaration.  The burden thus shifts to Plaintiff to show the relevance of the material, and to identify and explain how his interests would be harmed with non-disclosure. *See Kelly*, 114 F.R.D. at 671.  Plaintiff does not meet his burden.

The official information privilege protects from disclosure the information from the confidential investigations and Defendant's personnel records.  Like the cell search information, it is the prison context that gives more weight to this assertion of privilege.  The Soderlund Declaration explains the particular dangers that arise when prisoners gain access to a correctional employee's personnel records and confidential investigations regarding charges of staff misconduct.  Personal information about individual employees is kept confidential from inmates because there is a danger that "the information will be distributed through the prison population, and some inmates may use this information to cause harm to prison officers, their families, or their property."  Docket # 55-5 at 4.  Information about confidential staff misconduct investigations is kept confidential to, among other things, encourage inmates to make truthful statements and to encourage investigating staff to accurately report their findings. *Id.* at 4-5.  Soderlund states (and Plaintiff does not dispute) that inmate witnesses are less likely to cooperate if they fear being labelled as snitches or identified

---

5.   Alicia A. Bower, Deputy Attorney General
     California Department of Justice

10

Case 3:12-cv-01674-EMC   Document 58   Filed 12/09/14   Page 11 of 16

persons cooperating with authorities because of the increased likelihood of being targeted for assault. *Id.* at 5.

A protective order is an unworkable solution here because there is no realistic enforcement mechanism against Plaintiff if he were to violate a protective order, as explained in the preceding section.

With regard to the materials in Defendant's personnel file, there might be some documents that might be relevant for impeachment purposes if this case ever goes to trial, but such documents are not necessary for Plaintiff to prepare his opposition to the pending motion for summary judgment. Therefore, if Defendant's motion for summary judgment is not granted, Plaintiff may seek materials from defendant's personnel files in more narrowly tailored discovery requests.

3.  **Materials About the Lexan-Front Cells**[4]

Interrogatories Nos. 8, 9, 11, and 12, and Requests For Production of Documents 8, 9, 11, and 12, asked for information and documents pertaining to Lexan-front cells. Defendant objected to these discovery requests on several grounds, including that the information was protected from disclosure by the official information privilege and was not relevant.

In analyzing these discovery requests, it helps to understand Plaintiff's claim and Defendant's defense. Plaintiff claims that Defendant caused him to be put in a Lexan-front cell to retaliate against him. Defendant does not contend that Plaintiff was put in a cell with a Lexan front because he had misbehaved in a manner that warranted placement in a cell with a Lexan front. Instead, Defendant contends that (a) he did not partake in the decision to move Plaintiff to the cell; (b) he was informed that Plaintiff was moved to a Lexan-front cell because prison officials needed Plaintiff's then-current cell for another inmate, i.e., Plaintiff was moved to resolve a housing need for another inmate; and (c) any inmate can be put in a Lexan-front cell when no other cell is

---

[4] Lexan is a polycarbonate sheeting material similar to plexiglass. Pelican Bay Operational Procedure 227 provides that an inmate may be put in a cell with a Lexan front following a battery or attempted battery on an inmate or staff, or a threat to commit battery on staff. *See* Docket # 55-4 at 23. Significantly, the same document also provides that "[a]n officer may approve an inmate to be housed in a Lexan cell when no other cell is available." *Id.*

persons cooperating with authorities because of the increased likelihood of being targeted for assault. *Id.* at 5.

A protective order is an unworkable solution here because there is no realistic enforcement mechanism against Plaintiff if he were to violate a protective order, as explained in the preceding section.

With regard to the materials in Defendant's personnel file, there might be some documents that might be relevant for impeachment purposes if this case ever goes to trial, but such documents are not necessary for Plaintiff to prepare his opposition to the pending motion for summary judgment. Therefore, if Defendant's motion for summary judgment is not granted, Plaintiff may seek materials from defendant's personnel files in more narrowly tailored discovery requests.

3.  <u>Materials About the Lexan-Front Cells</u>[4]

Interrogatories Nos. 8, 9, 11, and 12, and Requests For Production of Documents 8, 9, 11, and 12, asked for information and documents pertaining to Lexan-front cells. Defendant objected to these discovery requests on several grounds, including that the information was protected from disclosure by the official information privilege and was not relevant.

In analyzing these discovery requests, it helps to understand Plaintiff's claim and Defendant's defense. Plaintiff claims that Defendant caused him to be put in a Lexan-front cell to retaliate against him. Defendant does not contend that Plaintiff was put in a cell with a Lexan front because he had misbehaved in a manner that warranted placement in a cell with a Lexan front. Instead, Defendant contends that (a) he did not partake in the decision to move Plaintiff to the cell; (b) he was informed that Plaintiff was moved to a Lexan-front cell because prison officials needed Plaintiff's then-current cell for another inmate, i.e., Plaintiff was moved to resolve a housing need for another inmate; and (c) any inmate can be put in a Lexan-front cell when no other cell is

---

[4] Lexan is a polycarbonate sheeting material similar to plexiglass. Pelican Bay Operational Procedure 227 provides that an inmate may be put in a cell with a Lexan front following a battery or attempted battery on an inmate or staff, or a threat to commit battery on staff. *See* Docket # 55-4 at 23. Significantly, the same document also provides that "[a]n officer may approve an inmate to be housed in a Lexan cell when no other cell is available." *Id.*

1 available. In response to Plaintiff's discovery requests, Defendant produced Pelican Bay
2 Operational Procedure 227 and provided substantive responses to the interrogatories.

3       Defendant makes a sufficient showing that the confidential documents and information
4 sought are covered by the official information privilege with the Soderlund declaration, and Plaintiff
5 does not meet the burden that shifted to him. Confidential information about which prisoners have
6 been placed in Lexan-front cells and the decision-making processes for such placements is covered
7 by the official information privilege.

8       The Soderlund declaration did not discuss Lexan cells or cells searches specifically, and
9 instead stated that the prison had confidential information that may be responsive to plaintiff's
10 discovery requests pertaining to these topics. Soderlund's lack of specificity is likely due to
11 plaintiff's very broad discovery requests. The Soderlund declaration explains that the prison has
12 documents that contain information about procedures and techniques during prison emergencies,
13 investigating criminal activities, personnel files, investigative files, and confidential informant
14 information that are classified and maintained as confidential and restricted from inmate viewing or
15 public disclosure, and must remain so for the reasons stated in the declaration.

16       More importantly, general information about Lexan cells is irrelevant to plaintiff's claim. A
17 plaintiff does not establish retaliation by showing breach of a prison rule, nor does a defendant
18 establish non-retaliation by pointing to a rule that permits his action. Recall that plaintiff says that
19 defendant had him put in the Lexan cell to retaliate for a complaint against another staff member,
20 and defendant says (a) defendant didn't take part in the decision at all and (b) plaintiff was put in the
21 cell because they needed plaintiff's cell for another inmate. Defendant does not state that plaintiff's
22 behavior led to plaintiff's placement in the Lexan cell. Plaintiff's Interrogatory No. 8 asked for
23 defendant's involvement, and defendant responded by denying involvement in the decision-making
24 as to the cell to which plaintiff was moved.

25       The prison manual quoted in footnote 3 of this order authorizes the placement in a Lexan cell
26 when no other cell is available. It therefore was permissible to put plaintiff in the Lexan cell,
27 assuming there is no other cell available, which begs the question of whether there was a non-Lexan
28 cell available (but even that is somewhat collateral to the retaliation claim at issue in this case, as it

does not establish retaliatory motive). Plaintiff asked in Interrogatory No. 11 whether there were other available cells, and Defendant responded that the prison does not maintain an index of which cells did or did not have Lexan covering on any particular dates in 2011, and noted that available housing was very limited at the time. Plaintiff's other discovery requests regarding the Lexan cells will not help him establish anything relevant to this case.   In Interrogatory No. 9, he asks when, why and by whom was cell 106 ordered to be covered with Lexan?  In light of the absence of any indication by plaintiff that the Lexan was put on the cell just for his arrival, this information is irrelevant.  His request for production of documents 9, seeking documentation of this information, is irrelevant for the same reason.  In Interrogatory No. 12, he requests an explanation of "any and all rules, procedures, restrictions, etc. pertaining to the use of lexan covered cells and the assignment of inmates within these cells."  As mentioned above, the Operational procedure mentioned in footnote 3 provides the general criteria, allows for placement in a Lexan cell for behavioral problems and allows any inmate to be housed in a Lexan cell when no other cell is available.  In light of this, any other rules, procedures, and regulations are irrelevant.

C.     Individual Requests/Interrogatories

Plaintiff's motion to compel further responses to Interrogatory Nos. 1, 2, 3, 5, 7, 8, 9, and 11-16 is denied.  Defendant provided substantive responses that gave relevant and non-privileged information.

Plaintiff's motion to compel as to Interrogatory No. 6 is denied.  Interrogatory No. 6 requested Defendant to "[s]tate the procedure and method" he used "to supervise the training cell search he ordered Correctional Officer C. Chavez to conduct."  Defendant provided no substantive response to this request, and instead objected on the grounds that, among other things, the information sought was not relevant because Plaintiff's claim is "not based on any allegation of insufficient supervision" and the information was covered by the official information privilege. Plaintiff does not adequately explain why the supervision procedures and methods were relevant to his claim or reasonably calculated to lead to the discovery of admissible evidence, and does not dispute that the requested information pertaining to cell searches was covered by the official information privilege.

13

Plaintiff's motion to compel further responses to his Request For Production of Document Nos. 1-6, 8, 9, 11, 12, 17 and 18[5] is denied. Defendant produced the relevant and non-privileged documents in his possession, custody and control. Plaintiff has not explained what further documents he seeks, and has failed to utilize the meet-and-confer process to discuss with Defendant the documents he believes should have been produced that were not.

Plaintiff's motion to compel a further response to his Request For Production of Documents No. 7 is DENIED. Defendant provided a supplemental response to that request, stating that no such document exists. Plaintiff does not explained how this response is inadequate.

D.    Scheduling On The Pending Summary Judgment Motion

When Plaintiff made his motion to compel, he also moved for a stay of the pending motion for summary judgment until he received further responses to his discovery requests. Now that the motion to compel has been denied, there is no need for a stay of the motion for summary judgment under Federal Rule of Civil Procedure 56(d). Plaintiff must prepare his opposition with the information and documents he already has. In the next section below, the Court requires an *in camera* production of documents by Defendant. There is no reason for Plaintiff to expect to see these documents, and therefore he must prepare his opposition to the motion for summary judgment without them. The Court will grant an extension of the deadlines for the pending motion for summary judgment to account for the time needed to resolve the pending discovery motion.

E.    Documents To Be Produced For *In Camera* Review

Although the Court will not order documents discussed herein be given to Plaintiff, because of the security and safety concerns discussed earlier in connection with the official information privilege, Defendant must produce for *in camera* review documents related to the staff complaint and the cell move.

---

[5] There are some non-sequential numbers in the Requests For Production Of Documents. This is due to Plaintiff's combination of Interrogatories and Requests For Production of Documents in a single document in which not every Interrogatory had a matching Request For Production of Documents.

This is a similar procedure to that utilized where a prisoner challenges the sufficiency of the evidence to support a gang validation decision, i.e., prison officials file a copy of the supporting evidence under seal so that the Court can examine the supporting documents to ensure some judicial review of prison officials' actions that a prisoner has asserted violated his constitutional rights. *See Zimmerlee v. Keeney*, 831 F.2d 183, 186-87 (9th Cir. 1987) (allowing *in camera* review of documentation from which credibility of confidential information may be assessed in prisoner's challenge to placement in security housing unit); *Mendoza v. Miller*, 779 F.2d 1287, 1295 (7th Cir. 1985) (allowing *in camera* review of confidential report documenting the reliability of the confidential informants for purposes of determining whether prison disciplinary proceeding satisfied due process); *id.* at 1291, 1298-99 (rejecting prisoner-petitioner's argument that magistrate denied him due process and effective representation of counsel in his habeas proceeding by refusing to allow his counsel to review materials submitted *in camera* regarding the confidential informants in prison disciplinary proceeding); *McKinney v. Meese*, 831 F.2d 728, 731 (7th Cir. 1987) (court must satisfy itself of reliability of confidential information, but may do that by examining the material *in camera*, and even "the specific reasons why the information is kept confidential may be kept from the inmate if necessary"); *id.* at 733 (informant's transfer to another prison did not support disclosure of materials to inmate: "[a]nother prison is not necessarily a sanctuary for a known informant," especially where petitioner is reportedly affiliated with a prison gang); *but see Association for Reduction of Violence v. Hall*, 734 F.2d 63 (1st Cir. 1984) (once court determines documents should not be turned over due to irrelevance and privilege, the court should not rely on them as an evidentiary basis for summary judgment).

The following documents must be produced for *in camera* review no later than **January 16, 2015**. First, Defendant must produce a copy of all the documents generated in connection with Plaintiff's staff complaint against him. That staff complaint was identified as "Staff complaint - Appeal # PBSP-D-11-01673." Docket # 21 at 46. Second, Defendant must produce any document which describes or reflects the process and reasons for specifically selecting Plaintiff's cell for search, if any such documents exist. Third, Defendant must produce a declaration from a knowledgeable person (with any relevant documentation generated at the time of the move for both

Plaintiff and the inmate who was moved into his cell) that provides a fuller explanation of Defendant's statement that "Plaintiff was moved from his cell in Facility D because the Pelican Bay prison administration determined that another inmate was a higher priority than Plaintiff for being housed in Facility D." Docket # 41 at 3. Specifically, the Court wants to see the reason another inmate had a higher priority for Plaintiff's former cell, such that it was necessary for Plaintiff to be moved to a cell with a Lexan front in another facility.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion to compel discovery and motion to stay the pending motion for summary judgment are **DENIED**. Docket # 48 and # 49. Plaintiff's motion for an extension of the deadline to file his opposition to Defendant's motion for summary judgment is **GRANTED**. Docket # 57.

The Court now sets the following new briefing schedule on Defendant's motion for summary judgment: No later than **January 16, 2015**, Plaintiff must file and serve on defense counsel his opposition to the motion for summary judgment. No later than **January 30, 2015**, Defendant must file and serve his reply, if any, in support of his motion for summary judgment.

Defendant must produce the documents for *in camera* review no later than **January 16, 2015**.

IT IS SO ORDERED.

Dated: December 9, 2014

EDWARD M. CHEN
United States District Judge