**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRENCE LLOYD HADDIX, JR., | No. C-12-1674 EMC (pr) |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| C/O SEAN BURRIS; *et al.*, | |
| Defendants. | |
| _____/ | |

## I.   INTRODUCTION

This is a *pro se* prisoner's civil rights action under 42 U.S.C. § 1983 in which the remaining claims are that defendant correctional sergeant J. Frisk ordered a cell search and a move to a cell with a Lexan front for Terrence Lloyd Haddix, Jr., in retaliation for the latter's First Amendment activities.  Sergeant Frisk now moves for summary judgment and Mr. Haddix opposes the motion. For the reasons discussed below, the motion will be denied with regard to the cell search and granted with regard to the move to the Lexan cell.  The action will be referred to the *Pro Se* Prisoner Mediation Program.

## II.   BACKGROUND

The following facts are undisputed unless otherwise noted:

The events in question took place in May - July 2011 at Pelican Bay State Prison.  At the time, Mr. Haddix was incarcerated in the security housing unit ("SHU") at Pelican Bay.  Docket # 21 (Amended Complaint) at 3.

**United States District Court**
For the Northern District of California

1    Defendant J. Frisk was a correctional sergeant "in the Institutional Gang Investigators Unit at

2  Pelican Bay.  In this role [he] was primarily responsible for gathering intelligence on potential

3  inmate gang activity.  As a Correctional Sergeant, [he] was also responsible for supervising and

4  training subordinate correctional officers in the safe custody, discipline, and welfare of the inmates

5  at Pelican Bay.  In particular, [he] was frequently required to train subordinate correctional officers

6  on proper cell search procedures."  Docket # 41 (Frisk Decl.) at 1-2.

7    Sean Burris was a correctional officer ("C/O") in the Institutional Gang Investigations Unit

8  ("IGI"), and was assigned to Pelican Bay.  Docket # 21 at 3.

9  A.    Inmate Appeals And Letters

10    In about May 2011, C/O Burris investigated Mr. Haddix to determine whether he qualified

11  for release from the SHU due to prolonged inactivity in a gang.  *Id.*  Mr. Haddix disagreed with

12  something C/O Burris wrote about him.  *Id.* at 3-4.[1]  On May 16, 2011, Mr. Haddix submitted a

13  CDCR-22 request for an interview to C/O Burris to discuss the matter. C/O Burris denied the request

14  the next day, stating that Mr. Haddix already had an interview with him regarding the information

15  obtained during the gang inactivity investigation.  *See* Docket # 21 at 4, 19.  On May 17, 2011, Mr.

16  Haddix resubmitted the request for supervisor-level review, and on May 20, 2011, IGI sergeant

17  Pieren responded unsatisfactorily to Mr. Haddix's request.  *See id.* at 4-5.

18    On May 25, 2011, Mr. Haddix filed a CDCR-602 inmate appeal and a CDCR-1858 staff

19  complaint against C/O Burris.  *id.* at 5.  The inmate appeal was rejected two days later because Mr.

20  Haddix had exceeded the allowable number of inmate appeals in a 14-day period.  *Id.*  On June 12,

21  2011, Mr. Haddix refiled the appeal and supporting documents.  *Id.*

22    On May 26, 2011, Mr. Haddix sent a letter to warden Lewis, complaining about C/O Burris'

23  actions.  *Id.*  The letter was returned to Mr. Haddix on June 17, 2011 by a correctional officer.  The

24  envelope had a May 31, 2011 postmark and also had a June 1, 2011 date stamp, although the date

25  stamp does not show who put it there.  *See id.* at 6, 34.  Inside the envelope was Mr. Haddix's letter

26

27    [1] The main focus of Mr. Haddix's original complaint was his claim that C/O Burris had

28  endangered him by writing a particular sentence in a memo.  The claim against C/O Burris was
dismissed.  *See* Docket # 4 at 4-6; Docket # 19 at 1-3.

**United States District Court**
For the Northern District of California

1   to warden Lewis as well as a typed note from sergeant Frisk stating: "If you have a complaint

2   against IGI staff, you need to submit a staff complaint to the Appeal coordinator and follow the

3   guidelines set forth in the California Code of Regulations, Title 15, section 3084, Inmate Appeals.'"

4   Docket # 21 at 6, 34.[2]

5          On June 1, 2011, Mr. Haddix wrote a letter to Anthony Chaus, head of the office of

6   correctional safety ("OCS") complaining about C/O Burris' actions. *Id.* at 5.  On June 17, 2011,

7   Everett Fischer of the OCS sent Mr. Haddix a letter stating that, on June 14, 2011, the OCS was

8   requested to respond to Mr. Haddix's June 1, 2011 letter. *Id.* at 39.  Mr. Fischer wrote that C/O

9   Burris did not work for the OCS and was instead assigned to Pelican Bay; as a result, Mr. Fischer

10  had forwarded Mr. Haddix's letter to warden Lewis, and told Mr. Haddix that he could contact his

11  inmate counselor or Pelican Bay public information officer lieutenant Acosta if he had further

12  questions. *Id.*

13  B.     The June 13 Cell Search

14         A regulation provided the following regarding cell searches: "Inspections of inmate cell or

15  living areas, property, work areas, and body shall be conducted on an unannounced, random basis as

16  directed by the institution head.  Such inspections shall be conducted no more frequently than

17  necessary to control contraband, recover missing or stolen property, or maintain proper security of

18  the institution."  15 Cal. Code Regs. § 3287(c).  The CDCR Operations Manual § 52050.16 provided

19  that "[p]ost orders shall require that a minimum of three cells, rooms, dorms or living areas in each

20  housing unit is searched daily on each of the second and third watches by the assigned unit officer."

21  Docket # 55-4 at 79.

22         On June 13, 2011, while Mr. Haddix was on the yard, C/O Chavez searched his cell.  C/O

23  Chavez conducted the search at the direction of sergeant Frisk.  C/O Chavez approached sergeant

24  Frisk "and inquired as to whether the IGI Unit needed any help.  At that time, [C/O Chavez] was a

25

26         [2] Mr. Haddix contends that the letter shouldn't have been opened by anyone other than the
warden since he had written "confidential mail" on the envelope, but he does not show that he has
27  any personal knowledge as to how letters from inmates to the warden are handled, and whether any
marking on the envelope makes any difference in their handling.  Mr. Haddix's First Amendment
28  claim for the alleged confiscation of the letter to warden Lewis was dismissed. *See* Docket # 35.

**United States District Court**
For the Northern District of California

1   relatively new officer and had only been assigned to Pelican Bay for approximately four months.

2   [Sergeant] Frisk responded in the affirmative, and he indicated a cell for [C/O Chavez] to search,

3   which Mr. Haddix was assigned to at the time." Docket # 64 at 2.

4          Although the parties agree that Mr. Haddix's cell was searched and that the search was

5   pursuant to sergeant Frisk's directive, they disagree as to sergeant Frisk's reasons for choosing Mr.

6   Haddix's cell to be searched. Mr. Haddix states that, in response to his inquiries at the time of the

7   search, C/O Chavez told him "that IGI had ordered him to 'strip and search Plaintiff's cell real

8   good,'" that the search was "'conducted as a scare tactic for a problem inmate.'" Docket # 21 at 5-6.

9   Mr. Haddix further states that C/O Chavez later told him: "'I went to IGI to find out why I was

10  ordered to search your cell and they couldn't even look me in the eye.' Officer Chavez went on to

11  say, 'I found out, Haddix, that IGI used me to try to scare you into dropping your complaint.'" *Id.* at

12  6.[3]

13  C.     <u>More Inmate Appeals And Letters</u>

14         On June 19, 2011, Mr. Haddix sent a second letter to warden Lewis complaining about C/O

15  Burris and sergeant Frisk. He did not receive a response. Docket # 21 at 7.

16

17

18         [3] Sergeant Frisk presents a different version of the facts regarding the reason for the cell
19  search. Sergeant Frisk declares: "In accordance with Pelican Bay policy providing that random cell
    searches can be performed at any time, and as a training exercise for a new correctional officer at
20  Pelican Bay, I ordered officer Chavez to search a random cell and bring me any contraband that he
    retrieved. The cell that I designated at random was Plaintiff Haddix's cell." Docket # 41 at 2.
21  Sergeant Frisk also presents a declaration from C/O Chavez in which C/O Chavez denies making
    most of the statements Mr. Haddix attributes to him. Specifically, he denies that he told Mr. Haddix
22  that the cell search was "conducted as a 'scare tactic for a problem inmate,'" denies that he told Mr.
    Haddix that "any IGI officers were not able to 'look [him] in the eye,'" and denies that he told Mr.
23  Haddix that he found out that "IGI used [him] to try and scare [Mr. Haddix] into dropping [his]
    complaint." Docket # 64 at 2. Sergeant Frisk also presents a declaration from correctional counselor
24  Statham, who states that she made inquiries later on the day of the search pursuant to Mr. Haddix's
    request, and sergeant "Frisk explained that he instructed Officer Chavez to search Plaintiff's cell in
25  part as a training opportunity for proper cell search procedures. Defendant Frisk explained at the
    time that he had selected a cell randomly for the search, and that he did not personally single out
26  Plaintiff's cell." Docket # 42 at 2.

27         Sergeant Frisk's version is relegated to a footnote not because it is less credible than Mr.
    Haddix's version, but instead because this is a motion for summary judgment. At the summary
28  judgment stage, when there is a disagreement as to the facts, the Court views the evidence in a light
    most favorable to the nonmoving party (here, Mr. Haddix).

United States District Court

For the Northern District of California

1    While being interviewed for a different inmate appeal on June 20, 2011, Mr. Haddix asked

2   sergeant Frisk why he ordered a cell search and expressed his belief that it was retaliatory for Mr.

3   Haddix's staff complaint against C/O Burris and letter to warden Lewis.  Docket # 21 at 7.  Sergeant

4   Frisk stated that as of June 13, 2011, he had no knowledge of the complaint or letter.  *Id.*  Elsewhere,

5   Mr. Haddix states that sergeant Frisk "began to smirk" and said "'the search was not done in

6   retaliation but to train an officer how to search a problem inmate's cell.'"  Docket # 60 at 5.

7    On June 28, 2011, Mr. Haddix filed a CDCR-602 inmate appeal and a CDCR-1858 staff

8   complaint against sergeant Frisk for the "cell search and tampering of legal mail," which Mr. Haddix

9   contended was in retaliation for his earlier staff complaint against C/O Burris.  *Id.*[4]

10  D.    The Move To The Lexan Cell

11   Pelican Bay Operational Procedure 227 provides that an inmate may be put in a cell with a

12  Lexan front following a battery or attempted battery on an inmate or staff, or a threat to commit

13  battery on staff.  *See* Docket # 55-4 at 23.  That same document also provides that "[a]n officer may

14  approve an inmate to be housed in a Lexan cell when no other cell is available."  *Id.*[5]

15   On July 6, 2011, Mr. Haddix was moved from D-facility 10-block to a restrictive cell with a

16  Lexan front in C-facility 1-block.  *Id.*  His cell was the only one in his section with a Lexan front.

17  *See* Docket # 60-2 at 2; Docket # 60-1 at 1.

18   Although the parties agree that Mr. Haddix was moved to a Lexan cell, they disagree as to

19  whether sergeant Frisk ordered the move to a Lexan cell and the reasons for the move.  Mr. Haddix

20  states that C/O Benson told him that he (Benson) tried to keep Mr. Haddix in his current location but

21  that sergeant Moore "said there's nothing he can do.  Sergeant Frisk wants you moved to C-1

22

23        [4] At the Court's request, sergeant Frisk submitted a copy of the documents generated in
24  connection with the investigation of the staff complaint for *in camera* review.  Nothing in those
    documents alters the analysis of the pending motion.

25        [5] The parties do not discuss it, but appear to agree that a cell with a Lexan front is
26  undesirable housing.  The parties do not present evidence on point but it is helpful to the discussion
    to note that Lexan is a polycarbonate sheeting material similar to plexiglass.  The parties do not
27  present evidence on point but filings in other prisoner cases indicate that a Lexan front has the
    benefit of preventing the inmate from launching projectiles at passers-by but also has the detriment
28  of making the cell unusually stuffy.  *See Harrison v. Sample*, 2008 WL 2220481, *1 n.1 (N. D. Cal.
    2008), *rev'd on other grounds*, 359 F. App'x (9th Cir. 2009).

**United States District Court**

For the Northern District of California

1    (Facility C 1-Block)." Docket # 60 at 9.  C/O Peterson stated while escorting Mr. Haddix to his new

2    cell that "'sergeant Frisk wanted you moved so there was nothing we could do about it.'"  *Id.*  Mr.

3    Haddix also declares that, when he arrived at his new cell, C/O Valdez told him that the Lexan front

4    "'was just put on.'" Docket # 60-1 at 1.[6]

5           Mr. Haddix tried to learn why he was in a Lexan cell and made several requests to have the

6    Lexan front removed that were denied.  In denying his July 28, 2011 request, lieutenant Rollings

7    wrote: "[y]ou were on Lexan while assigned to D10 and will continue to remain on Lexan

8    restrictions until it is deemed as safe to do so."  Docket # 60-2 at 2 (errors in source).  Mr. Haddix

9    then requested a supervisor review by the associate warden of the SHU: "Mr. McGuyer I [am]

10   writing you to find out why I'm on Lexan restriction.  I've not had any write ups nor any chronos as

11   stated above but I got into one argument w/ a C/O Brewer in D-10 in Oct. of 2010.  Since then I've

12   had no issues again there is no paper work 115 chronos etc. So I don't know who deems it 'safe to

13   do so,' and no I was not in a Lexan cell in D-10.  I was in 203."  *Id.* (errors in source).  On August 2,

14   2011, Mr. Haddix wrote a CDCR-602 inmate appeal regarding the Lexan cell covering.  He wrote:

15                    On 8-1-11 I had a I/M appeal interview with IGI sgt. J. Frisk.  I asked
                     why I was placed in a Lexan cell.  He informed me that IGI didn't
16                   order it, that C-1-106 was the only open cell and they needed my cell
                     in D-10-203.  So on 8-2-11 my floor staff took a CDCR 22 (see
17                   attached) to the C-SHU captain.  The Capt. response is I'm on Lexan
                     restriction.  I've done nothing to be in a Lexan cell.  My last 115 for
18                   violence was 2002.  In Oct. of 2010 I got in a heated argument with

19   ───────────────────

20       [6] Sergeant Frisk's explanation of the reasons for the move differs from Mr. Haddix's.
     Sergeant Frisk declares that Mr. Haddix was moved from his cell in Facility D to an open cell in
21   Facility C "because the Pelican Bay prison administration determined that another inmate was a
     higher priority than Plaintiff for being housed in Facility D."  Docket # 41 at 3.  Sergeant Frisk
22   further declares that, although the new cell had a Lexan front, the transfer was not retaliatory.
     Sergeant Frisk also presents a copy of a letter Mr. Haddix wrote to him dated September 9, 2012
23   (after this action was filed), in which Mr. Haddix wrote in which he argued that the cell search was
     retaliatory but the move to the Lexan cell was "legitimate:" "You ordered me moved to a Lexan cell
24   but you had info I was to assault two correctional officers (even though via the appeal process I
     proved the info false, I'll give you the move behind Lexan as legitimate but the cell search *no* you
25   retaliated against me and I can prove it!"  Docket # 41-1 at 3.

26       As with the evidence regarding the reason for the cell search, sergeant Frisk's version is
     relegated to a footnote because this is a summary judgment motion and, when the facts are disputed,
27   the court views the evidence in the light most favorable to the nonmovant.  At the Court's request,
     sergeant Frisk submitted for *in camera* review a declaration further explaining his statement that
28   another inmate was a higher priority than Plaintiff for being housed in Facility D.  Nothing in that
     declaration alters the analysis of the pending motion.

United States District Court

For the Northern District of California

> C/O T. Brewer and let my emotions get the best of me.  No 115 was
> issued.  I was placed in a Lexan cell D-10-104 with no further
> incidents.  I lived in D-10-104 from Oct. 2010 to June of 2011.  D-10
> floor officers moved me to D-10-203.  I had no problems.  There is no
> documentation or reason to hold me in a restrictive cell (Lexan).

Docket # 60-2 at 3-4.

Eventually, Mr. Haddix received First Level Appeal response.  That response stated that sergeant Eggen had investigated the matter and "found a copy of a Confidential memorandum dated September 13, 2010, that spoke of two informants that stated you intended to assault staff, specifically Correctional Officers Brewer and Jones, however, the reliability of the informants was never established. [¶] Sergeant Eggen also found through investigation that the restriction is under review by J. A. Rollins, Facility Captain. . . . It has been determined that you will likely be removed by Facility Captain Rollins upon the next monthly review as long as no new information is received relative to safety concerns by you against staff or inmates."  Docket # 60-2 at 10-11.  Two CDCR-128 chronos were written documenting that Mr. Haddix was put in a Lexan cell as a security precaution based on information "received on September 13, 2010, that you were going to assault Correctional Officer Jones and Correctional Officer Brewer."  Docket # 60-2 at 13 (CDCR-128B dated August 4, 2011, stating the Lexan front would remain through September 1, 2011, and would be reviewed by the facility captain prior to the expiration date for possible continuance) and 14 (CDCR-128B dated September 1, 2011, stating the Lexan front would remain through October 1, 2011, and would be reviewed by the facility captain prior to the expiration date for possible continuance).  One CDCR-128B has a handwritten notation indicating that the Lexan front was removed on September 15, 2011.  Docket # 60-2 at 14.

Mr. Haddix sent to sergeant Frisk a letter dated September 9, 2012, in which Mr. Haddix wrote: "I have sworn statements from people involved to exactly what you said about me when you ordered my cell searched.  You ordered me moved to a Lexan cell but you had info I was to assault two correctional officers (even though via the appeal process I proved the info false, I'll give you the move behind Lexan as legitimate but the cell search *no* you retaliated against me and I can prove it!"  Docket # 41-1 at 3.

United States District Court

For the Northern District of California

### III.   **LEGAL STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (a fact is material if it might affect the outcome of the suit under governing law, and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.") The moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citations omitted.) The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv. Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *See id.* at 631.

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge). Here, Mr. Haddix's amended complaint was made under penalty of perjury and therefore is considered as evidence.

United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV. DISCUSSION

A prisoner has a First Amendment right to file grievances against prison officials without being subjected to retaliation in response thereto. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

A.      The Cell Search

Sergeant Frisk does not dispute that Mr. Haddix engaged in activity protected by the Frist Amendment before he ordered the cell search. Sergeant Frisk urges that Mr. Haddix's retaliatory cell search claim fails because Mr. Haddix cannot show a causal connection, a chilling effect, or the absence of a legitimate penological purpose for the search. Triable issues of fact require rejection of sergeant Frisk's arguments.

Causal connection: A prisoner must show a "causal connection between the adverse action and the protected conduct." *Watison*, 668 F.3d at 1114. Mere speculation that a defendant acted out of retaliation is not enough. *See Wood v. Yordy*, 753 F.3d 899, 904-05 (9th Cir. 2014) (affirming grant of summary judgment where no evidence that defendants knew about plaintiff's prior lawsuit, or that defendants' disparaging remarks were made in reference to prior lawsuit). "[T]iming can properly be considered as circumstantial evidence of retaliatory intent," although timing alone is not enough to support a finding of retaliation. *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995); *Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (retaliation claim cannot rest on the logical fallacy of *post hoc, ergo propter hoc*, i.e., "after this, therefore because of this"); *see, e.g., Bruce v. Ylst*, 351 F.3d 1283, 1288-89 (9th Cir. 2003) (retaliatory motive may be shown by the timing of the allegedly retaliatory act and inconsistency with previous actions, as well as direct evidence); *Pratt*, 65 F.3d at 808 (error to find that the allegedly retaliatory action that preceded a television interview was caused by the interview).

9

**United States District Court**

For the Northern District of California

1    Sergeant Frisk urges that the retaliatory cell search claim fails because he had no knowledge

2  of Mr. Haddix's inmate appeal against C/O Burris or letter to the warden when he ordered the cell

3  search, and therefore it cannot be said that the inmate appeal or letter was the substantial or

4  motivating factor for sergeant Frisk's actions. Viewing the evidence and drawing the reasonable

5  inferences therefrom in the light most favorable to Mr. Haddix, a reasonable jury could find

6  otherwise.  Mr. Haddix had re-filed his inmate appeal against C/O Burris just one day before

7  sergeant Frisk ordered his cell searched.[7]  Although this timing alone does not support a finding of

8  retaliation, there is additional evidence that, when coupled with the timing, is sufficient to permit a

9  jury to find that sergeant Frisk knew of the First Amendment activity and had the cell searched

10  because of it.  Mr. Haddix presents evidence that C/O Chavez told him that the search was being

11  done "as a scare tactic for a problem inmate" and that IGI had used C/O Chavez "to try and scare

12  you into dropping your complaint."  Although Mr. Haddix fails to differentiate between IGI (the

13  department) and sergeant Frisk (an individual member of IGI), a reasonable jury could conclude that

14  sergeant Frisk was the sender of the message based on Mr. Haddix's evidence that the search was

15  ordered to scare Mr. Haddix into dropping his complaint plus the undisputed evidence that sergeant

16  Frisk had ordered the cell search.  Mr. Haddix has raised a triable issue that his filing of the inmate

17  appeal against C/O Burris was the substantial or motivating factors for sergeant Frisk's order to

18  search his cell. *See Bruce*, 351 F.3d at 1289 (triable issue existed as to whether the motive for a

19  gang validation was retaliatory based on statements indicating that the validation was payback for

20  earlier complaints, combined with suspect timing and the use of evidence previously rejected).

21    Chilling effect:  To prevail on a retaliation claim, a plaintiff must show a chilling effect on

22  his First Amendment rights.  The proper inquiry is "'whether an official's acts would chill *or* silence

23  a person of ordinary firmness from future First Amendment activities.'"  *Rhodes*, 408 F.3d at 568

24

25

26

27    [7] The Court will not separately analyze the claim with regard to the letter to the warden,
because the inmate appeal presents a stronger case for Mr. Haddix.  However, the absence of a

28  separate discussion is not a finding that the letter could not be the basis for a retaliation claim.

1  (quoting *Mendocino Environmental Center v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir.

2  1999).[8]

3      Sergeant Frisk contends that the required chilling effect did not exist because cell searches

4  were commonplace, the search did not result in any physical harm or property damage, and Mr.

5  Haddix continued to file inmate appeals.  This is a close call, but a reasonable jury could conclude

6  that knowing that one's cell would be searched if one filed an inmate appeal would chill a person of

7  ordinary firmness from future First Amendment activities, even in a prison unit where cell searches

8  could be done on a random basis as well as for cause.  A retaliatory search makes a certainty of that

9  which is only a possibility under a policy of truly random cell searches.  That is, an inmate living

10  with a random search policy knows each day that maybe his cell will be searched and maybe it

11  won't, whereas an inmate being subjected to retaliation is led to believe that the price of First

12  Amendment activity is a cell search.  The fact that Mr. Haddix continued to file inmate appeals and

13  send letters does not negate the existence of this element because the chilling effect need not be so

14  great as to totally silence the inmate.  *See Rhodes*, 408 F.3d at 568-69 (rejecting argument that

15  inmate did not state a claim for relief because he had been able to file inmate grievances and a

16  lawsuit).

17      Legitimate correctional goals:  The prisoner bears the burden of pleading and proving

18  absence of legitimate correctional goals for the conduct of which he complains.  *Pratt*, 65 F.3d at

19  806.  At that point, the burden shifts to the prison official to show, by a preponderance of the

20  evidence, that the retaliatory action was narrowly tailored to serve a legitimate penological purpose.

21  *See Schroeder v. McDonald*, 55 F.3d 454, 461-62 (9th Cir. 1995) (defendants had qualified

22  immunity against retaliation claim based on their decision to transfer prisoner to preserve internal

23  order and discipline and maintain institutional security).

24      Sergeant Frisk argues that the retaliation claim fails because the cell search was supported by

25  legitimate correctional goals.  He states that he ordered the cell search in part as a training exercise

26

27      [8] Mr. Haddix argues that the chilling effect can be satisfied if the defendant intends to chill.
That is not a correct statement of the law.  As noted in the text, the inquiry uses an objective
28  standard, and focuses on the impact on the person being subjected to the adverse action.

**United States District Court**
For the Northern District of California

11

United States District Court

For the Northern District of California

1   for a new correctional officer and pursuant to a policy that allowed random cell searches.  Viewing

2   the evidence in the light most favorable to the nonmoving party, a reasonable jury could disbelieve

3   sergeant Frisk's statement that the search was ordered as a training exercise, given that he does not

4   identify any steps he took to ensure that this search was performed properly.  There is no evidence

5   that sergeant Frisk watched C/O Chavez conduct the search, searched the cell after C/O Chavez or

6   did anything else to monitor the adequacy of C/O Chavez's efforts.

7       Sergeant Frisk also contends that Mr. Haddix's cell was selected at random, in accord with

8   the prison policy that random cell searches can be performed at any time.  The prison policy did

9   allow for random cell searches, but there is no evidence – other than sergeant Frisk's say-so – that

10  the cell was chosen randomly.  A jury easily could believe him, but it could have disbelieved him as

11  well.  This sort of unverifiable statement of purpose is insufficient to warrant summary judgment –

12  as it could be used to defeat almost any retaliatory search claim – particularly given the triable issue

13  as to sergeant Frisk's other reason (i.e., that the search was done as a training exercise) for ordering

14  the search.  *See Bruce*, 351 F.3d at 1289 ("prison officials may not defeat a retaliation claim on

15  summary judgment simply by articulating a general justification for a neutral process, when there is

16  a genuine issue of material fact as to whether the action was taken in retaliation for the exercise of a

17  constitutional right").  There are thus triable issues with regard to the existence of legitimate

18  penological purposes for the cell search.

19      A trier of fact must hear both versions and decide who to believe.  Mr. Haddix has

20  established "genuine dispute[s] as to [] material facts" on his retaliatory cell search claim.  Fed. R.

21  Civ. P. 56(a).  Summary judgment therefore is not appropriate on this retaliation claim.  The same

22  factual disputes that preclude summary judgment on the retaliation claim preclude summary

23  judgment on the qualified immunity defense, as sergeant Frisk would not be entitled to qualified

24  immunity under Mr. Haddix's version of the facts.  A defendant is not entitled to qualified immunity

25  if a constitutional violation has occurred, the law was clearly established at the time and "it would be

26  clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*

27  *v. Katz*, 533 U.S. 194, 201-02 (2001).  *See Carepartners, LLC v. Lashway*, 545 F.3d 867, 883 (9th

28  Cir. 2008) (law has been clearly established since at least 1989 that "it is unlawful for the

United States District Court
For the Northern District of California

1   government to deliberately retaliate against a citizen for exercising his right to comment on (and

2   publicly criticize) government officials' actions and his right to access the courts and administrative

3   appeals process for redress of grievances").

4   B.       The Move To The Lexan Cell

5          Sergeant Frisk contends that the retaliation claim based on Mr. Haddix's move to the Lexan

6   cell must fail because there is no showing of a causal connection between the move and Mr.

7   Haddix's First Amendment activity and because there was a legitimate penological purpose for the

8   move.  The Court agrees that Mr. Haddix has not presented evidence to prove or show a triable issue

9   on his claim that his move to the Lexan cell was retaliatory.

10         Causal connection:  To prevail on a retaliation claim, the prisoner must show "a causal

11   connection between the adverse action and the protected conduct."  *Wood*, 668 F.3d at 1114.  Mr.

12   Haddix has not proven or shown a triable issue that sergeant Frisk moved him to a Lexan cell

13   because of his First Amendment activities.  On the evidence in the record, a jury could find that

14   sergeant Frisk ordered him moved to Facility D from Facility C (although not specifically to a Lexan

15   cell), but no reasonable jury could find that such an order was given because of Mr. Haddix's inmate

16   appeals and letters.

17         Mr. Haddix presents evidence that one correctional officer told him that "sergeant Frisk

18   wants you moved to C-1 (Facility C 1 block)" and another said that "sergeant Frisk wanted you

19   moved so there was nothing we could do about it.".  Even assuming arguendo that sergeant Frisk

20   was the person who decided that Mr. Haddix was to be moved to Block 1 of Facility C, merely

21   sending the inmate to another section of the prison does not establish or raise a triable issue of fact

22   that sergeant Frisk ordered that the inmate be put specifically in a Lexan cell because there were

23   many cells without Lexan fronts in that section.  The cell Mr. Haddix went to was the only one in his

24   section with a Lexan front.  Mr. Haddix presents evidence that when he arrived at his new cell,

25   another correctional officer told him that the Lexan front was "just put on" the cell, but that says

26   nothing about who ordered that Lexan front to be put on the cell.  Mr. Haddix can only speculate

27   that sergeant Frisk caused him to be moved specifically into a Lexan cell or caused the Lexan cover

28   to be put on the cell just for him, but Mr. Haddix's unsupported speculation is insufficient to defeat

13

United States District Court

For the Northern District of California

1   summary judgment.  Nothing in the record supports his claim that sergeant Frisk ordered Mr.

2   Haddix into the Lexan covered cell.

3        More importantly, there is no evidence to demonstrate that the cell move was because of Mr.

4   Haddix's First Amendment activity.  Mr. Haddix did engage in First Amendment activity before he

5   was moved to the Lexan cell, but the timing alone is insufficient to demonstrate the necessary causal

6   connection.  Unlike the cell search claim, Mr. Haddix presents no evidence that sergeant Frisk or

7   any other correctional official told him that the Lexan cell was done to scare him or pay him back

8   for his inmate appeals or letters.  Mr. Haddix suggests that the move to the Lexan cell was part of

9   ongoing retaliation, but this speculation insufficient to defeat summary judgment.  Indeed, there

10  were several acts by sergeant Frisk between the cell search and the move to the Lexan cell that

11  strongly indicate the absence of any sort of campaign: instead of throwing away Mr. Haddix's letter

12  to the warden, sergeant Frisk returned the letter with directions to file an inmate appeal; instead of

13  emphasizing any retaliatory message he was supposedly trying to convey with the cell search,

14  sergeant Frisk responded to inquiries from both Mr. Haddix and correctional counselor Statham by

15  saying that the cell was picked randomly for a search.  Retaliation is not established simply by

16  showing adverse activity by defendant after protected speech; rather, plaintiff must show a nexus

17  between the two. *See Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (retaliation

18  claim cannot rest on the logical fallacy of *post hoc, ergo propter hoc*, i.e., "after this, therefore

19  because of this"); *see, e.g., id.* (summary judgment proper against plaintiff who could only speculate

20  that adverse employment decision was due to his negative comments about his supervisor six or

21  seven months earlier).  The retaliation claim fails due to the absence of evidence of a causal

22  connection between the protected conduct and the adverse action.

23       Legitimate penological purpose:  To survive summary judgment on a retaliation claim, the

24  prisoner must show that the action did not advance a legitimate correctional goal.  Here, Mr. Haddix

25  has failed to prove or raise a triable issue of fact that his move to the Lexan cell did not advance a

26  legitimate correctional goal.  His evidence actually demonstrates that there was a legitimate

27  penological purpose for his placement in the Lexan cell: prison officials' belief he had threatened to

28  harm correctional officers.  *See Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 901 (9th Cir.

**United States District Court**
For the Northern District of California

1    2008) (finding no retaliation where plaintiff presented no evidence that defendants gave her a traffic

2    citation after reading a newspaper article about her First Amendment activities, rather than because

3    she drove past a police barricade with a "road closed" sign on it).  When Mr. Haddix protested his

4    placement in the Lexan cell, lieutenant Rollings responded that he was in there because of his threat

5    to harm correctional staff.  The prison's operational procedure provided for the placement of an

6    inmate in a Lexan cell if, among other things, he "threatens to commit battery on staff." Docket #

7    55-4 at 23.  Mr. Haddix does not contend that putting an inmate in a Lexan cell as a precaution to

8    prevent an attack on staff does not advance a legitimate penological purpose.  Regardless of whether

9    prison officials' belief turned out to be well-founded, Mr. Haddix does not demonstrate that the

10   perceived threat was fabricated, let alone fabricated by sergeant Frisk.

11          Mr. Haddix even conceded in a letter to sergeant Frisk that his placement in the Lexan cell

12   was "legitimate."  Mr. Haddix wrote:  "you had info I was to assault two correctional officers (even

13   though via the appeal process I proved the info false, I'll give you the move behind the Lexan as

14   legitimate."  Docket # 41-1 at 3.  Mr. Haddix now attempts to distance himself from that statement

15   by arguing that the letter was an effort to compromise his claims against sergeant Frisk, but that does

16   not create a triable issue of fact as to whether there was not a legitimate penological purpose for his

17   placement in a Lexan cell.  Mr. Haddix's admission that there was a "legitimate" reason to put him

18   in the Lexan cell undermines his argument that his placement in the Lexan cell was for retaliatory

19   purposes.

20          The evidence of Mr. Haddix's threat to staff that supported his placement in the Lexan cell

21   was later discounted because an investigation done in August or September 2011 – after he was

22   placed in the Lexan cell – determined that the "the reliability of the informants was never

23   established." Docket # 60-2 at 10.  That evidence shows that it may have been a mistake to put Mr.

24   Haddix in a Lexan cell, but there was a legitimate reason to place him in the cell at the time he was

25   placed.  There are no facts to establish retaliation, let alone retaliation by sergeant Frisk.

26          Viewing the evidence and the inferences therefrom in the light most favorable to Mr. Haddix,

27   sergeant Frisk is entitled to judgment as a matter of law on the claim that he ordered Mr. Haddix

28   moved to a Lexan cell in retaliation for First Amendment activity.

**United States District Court**

For the Northern District of California

1          1.      Qualified Immunity

2          The defense of qualified immunity protects "government officials . . . from liability for civil

3   damages insofar as their conduct does not violate clearly established statutory or constitutional

4   rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818

5   (1982).  In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court set forth a two-pronged test to

6   determine whether qualified immunity exists.  First, the court asks:  "Taken in the light most

7   favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a

8   constitutional right?"  *Id.* at 201.  If no constitutional right was violated if the facts were as alleged,

9   the inquiry ends and defendants prevail.  *See id.*  If, however, "a violation could be made out on a

10  favorable view of the parties' submissions, the next, sequential step is to ask whether the right was

11  clearly established. . . .  'The contours of the right must be sufficiently clear that a reasonable

12  official would understand that what he is doing violates that right.' . . . The relevant, dispositive

13  inquiry in determining whether a right is clearly established is whether it would be clear to a

14  reasonable officer that his conduct was unlawful in the situation he confronted."  *Id.* at 201-02

15  (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  Although *Saucier* required courts to

16  address the questions in the particular sequence set out above, courts now have the discretion to

17  decide which prong to address first, in light of the particular circumstances of each case.

18  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

19         As discussed in the preceding section, the evidence in the record does not establish a

20  violation of Mr. Haddix's constitutional rights with regard to the move to the Lexan cell.  Sergeant

21  Frisk prevails on the first step of the *Saucier* analysis.  Even if a constitutional violation had been

22  shown, however, sergeant Frisk would prevail on the second step of the *Saucier* analysis.  Given the

23  undisputed evidence that prison officials had information that Mr. Haddix had threatened to assault

24  two correctional officers, it would not have been clear to a reasonable prison official that putting Mr.

25  Haddix in a Lexan cell would violate his right to be free from retaliation for his First Amendment

26  activities.  Sergeant Frisk is entitled to judgment as a matter of law on the qualified immunity

27  defense with regard to the claim that Mr. Haddix was moved to a Lexan cell in retaliation for his

28  First Amendment activities.

**United States District Court**

For the Northern District of California

1    C.        Damages For Mental/Emotional Injuries

2           Sergeant Frisk argues that Mr. Haddix's claim for mental or emotional injuries should fail

3    under 42 U.S. § 1997e(e) because he did not suffer any physical harm.  It is unclear exactly what

4    allegations or claim sergeant Frisk challenges because Mr. Haddix did not allege a separate claim in

5    his amended complaint for mental or emotional injuries.  The amended complaint alleged that C/O

6    Burris' actions that allegedly violated the Eighth Amendment caused him mental anguish, but those

7    claims and that defendant have been dismissed from this action.  *See* footnote 1.

8           The statute sergeant Frisk cites has been construed by the Ninth Circuit to have a rather

9    limited application.  42 U.S.C. § 1997e(e) provides: "No Federal civil action may be brought by a

10   prisoner confined in a jail, prison or other correctional facility for mental or emotional injury

11   suffered while in custody without a prior showing of physical injury."  The physical injury

12   requirement only applies to claims for mental and emotional injuries and does not bar an action for a

13   violation of a constitutional right.  In *Oliver v. Keller*, 289 F.3d 623, 630 (9th Cir. 2002), the court

14   held that § 1997e(e) does not bar claims for nominal, compensatory or punitive damages based on

15   the violation of a constitutional right.  *Oliver*, 289 F.3d at 630.  Under *Oliver*, damages would be

16   available for a violation of Mr. Haddix's First Amendment right to be free from retaliation without

17   regard to his ability to show that he was physically injured.  The present case is quite similar to the

18   case of *Canell v. Lightner*, 143 F.3d 1210 (9th Cir. 1998), in which the inmate sued jail officials for

19   violations of his First Amendment religious freedom rights.  The Ninth Circuit rejected a defense

20   contention that § 1997e(e) barred the action because the prisoner alleged only mental or emotional

21   injury without physical injury:

22              [The plaintiff] is not asserting a claim for "mental or emotional
                injury."  He is asserting a claim for a violation of his First Amendment
23              rights.  The deprivation of First Amendment rights entitles a plaintiff
                to judicial relief wholly aside from any physical injury he can show, or
24              any mental or emotional injury he may have incurred.  Therefore, §
                1997e(e) does not apply to First Amendment [c]laims regardless of the
25              form of relief sought.

26   *Canell*, 143 F.3d at 1213; *see also Oliver*, 289 F.3d at 630 ("To the extent that appellant's claims for

27   compensatory, nominal or punitive damages are premised on alleged Fourteenth Amendment

28

1 violations, and not on emotional or mental distress suffered as a result of those violations, §

2 1997e(e) is inapplicable and those claims are not barred").

3       It is undisputed that Mr. Haddix suffered no physical injury as a result of sergeant Frisk's

4 alleged actions.  Section 1997e(e) therefore bars him from pursuing a separate claim for mental or

5 emotional distress, but does not bar him from pursing in his claims for damages for the allegedly

6 retaliatory cell search.

7   D.      Referral To Pro Se Prisoner Mediation Program

8       The Court has determined that sergeant Frisk is entitled to judgment as a matter of law on

9 Mr. Haddix's claim that sergeant Frisk moved him to a Lexan cell in retaliation for First

10 Amendment activities.  Therefore, the only claim that remains for adjudication is Mr. Haddix's

11 claim that sergeant Frisk ordered his cell to be searched in retaliation for Mr. Haddix's First

12 Amendment activities.  In light of the narrow dispute, this case appears to be a good candidate for

13 the Court's *pro se* prisoner mediation program and will be referred to that program.

## V.   CONCLUSION

15       Defendant's motion for summary judgment is DENIED IN PART and GRANTED IN PART.

16 (Docket # 38.)  Defendant's motion for summary judgment is denied with respect to the claim that

17 he retaliated against Plaintiff by ordering a cell search.  Defendant's motion for summary judgment

18 is granted with respect to the move to a Lexan cell; Defendant is entitled to judgment as a matter of

19 law in his favor on Plaintiff's claim that Defendant ordered him or otherwise caused him to be

20 moved to a Lexan cell in retaliation for his First Amendment activities and Defendant is entitled to

21 judgment as a matter of law in his favor on his defense of qualified immunity against that claim.

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

United States District Court
For the Northern District of California

1    Good cause appearing therefor, this case is now referred to Magistrate Judge Vadas for

2  mediation proceedings pursuant to the *Pro Se* Prisoner Mediation Program.  The proceedings will

3  take place **within one-hundred and twenty days** of the date this order is filed.  Magistrate Judge

4  Vadas will coordinate a time and date for a mediation proceeding with all interested parties and/or

5  their representatives and, **within seven days** after the conclusion of the mediation proceedings, file

6  with the Court a report for the proceedings.  The Clerk will send to Magistrate Judge Vadas a copy

7  of this order.

8

9    IT IS SO ORDERED.

10

11  Dated: March 10, 2015

12                                                                   _____
                                                                        EDWARD M. CHEN
                                                                        United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28